**TRI–EX ENTERPRISES, INC.,** Plaintiff,

v.

**MORGAN GUARANTY TRUST COMPANY OF NEW YORK,** Federal Republic of Nigeria, Central Bank of Nigeria, and Alan London, Defendants.

**MORGAN GUARANTY TRUST COMPANY OF NEW YORK,** Federal Republic of Nigeria and Central Bank of Nigeria, Defendants,

v.

Alan **LONDON** and Lime International Corporation, Third-Party Defendants.

80 Civ. 3856 (WCC).

United States District Court, S.D. New York.

Sept. 22, 1982.

On Motion for Partial Summary Judgments Oct. 6, 1983.

See also, D.C., 583 F.Supp. 1116, D.C., 586 F.Supp. 930.

Breed, Stairs & Berger, New York City, for plaintiff; Andrew Berger, Christopher F. Meatto, Arie Bucheister, New York City, of counsel.

Lowe & Knapp, New York City, for defendant Alan London; Robert P. Knapp, Jr., Raymond L. Herbert, Stephen D. Ryan, III, Jean-Pierre VanLent, New York City, of counsel.

Halley & Chalos, New York City, for defendants Federal Republic of Nigeria and Central Bank of Nigeria; Michael G. Chalos, Robert J. Brown, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Before this Court is a motion by defendant Alan London ("London") for an order pursuant to Rules 12(c) and 12(h)(3), F.R. Civ.P., dismissing the complaint against him on the ground of lack of subject matter jurisdiction. In its complaint, plaintiff invokes this Court's jurisdiction over its claims against the Federal Republic of Nigeria ("Nigeria") and the Central Bank of Nigeria ("CBN") under the Foreign Sovereign Immunities Act ("FSIA"),[1] while it contends that jurisdiction over defendant London is properly exercised under principles of pendent jurisdiction. It is undisputed that there exists no independent basis for the exercise of federal jurisdiction over plaintiff's claim against London.

In support of his motion, London presents two alternative arguments. First, he argues that 28 U.S.C. § 1330 does not provide a basis for federal jurisdiction in this action, and that there is accordingly no possible federal claim to which plaintiff's claim against London can be pendent. Alternatively, London asserts that even if plaintiff has a federal cause of action against Nigeria and CBN, plaintiff's claim against London is not pendent to those claims. This Court has concluded that while federal jurisdiction in this action properly exists under 28 U.S.C. § 1330, pendent party jurisdiction is inapplicable to plaintiff's claim against defendant London. Accordingly, the claim against defendant London will be dismissed.

---

1. Act of October 21, 1976, Pub.L. 94–583, 90 Stat. 2891, *codified at* 28 U.S.C. §§ 1330; 1332(a)(2)–1332(a)(4); 1391(f); 1441(d); and 1602–1611.
The jurisdiction-conferring section of the FSIA, 28 U.S.C. § 1330, provides that "the district courts shall have original jurisdiction ... of any nonjury civil action against a foreign state ... as to any claim .for relief in personam with respect to which the foreign state is not entitled to immunity ...."

## I.

The facts alleged in plaintiff's complaint that are necessary to resolve this motion can be quickly summarized. Plaintiff Tri-Ex Enterprises, Inc. is a New York corporation. In April 1974, plaintiff entered into contracts with Nigeria to supply 500,000 metric tons of cement at a price of $49.50 per metric ton. In August 1974, Nigeria agreed to increase the price it would pay plaintiff to $53 per metric ton. Payment to plaintiff for the cement was to have been made by a letter of credit issued by CBN and confirmed by Morgan Guaranty Trust Company of New York ("Morgan"). Nigeria's contracts with plaintiff were part of a huge program of cement purchases during 1974 and 1975. It soon became apparent that Nigeria had contracted for the delivery of much more cement than could feasibly be discharged in Lagos, Nigeria, and sometime during the middle of 1975 there developed a massive backlog of ships waiting to discharge their cement. In response to this congestion, CBN in September 1975 issued directives restricting the ability of suppliers, such as plaintiff, to deliver the cement they had contracted to supply. As a result of these restrictions, plaintiff found itself unable to find any shippers willing to deliver cement to Nigeria. At Nigeria's request, plaintiff then traveled to Lagos in an attempt to settle compensation for breach of the contracts, but no compensation was ever paid.

In November 1975, London was introduced to plaintiff by Lime International Corp. ("Lime"), a third party, and was informed of plaintiff's inability to find a shipper. Upon London's assertion that he could find shippers willing to deliver cement to Nigeria, plaintiff agreed that if London was able to present documents establishing the shipment of cement, plaintiff would direct Morgan to pay London a substantial portion of the funds Morgan would otherwise pay plaintiff. In a fraudulent effort to obtain these funds, London presented to plaintiff four falsified bills of lading. Plaintiff, believing this documentation to be genuine, presented them to Morgan along with drafts aggregating $2,286,-473. Plaintiff directed Morgan to pay it $129,423, and to pay the balance to Lime and to London's Liechtenstein corporation, Temo Anstalt. Morgan, however, refused to pay these drafts, apparently having discovered that the bills were not genuine. Plaintiff ultimately went out of business in March 1976.

On July 8, 1980, plaintiff filed this action against Nigeria, CBN, Morgan, and London. Plaintiff alleges breach of contract claims against defendants Nigeria and CBN, as well as a claim against Nigeria asserting that plaintiff was induced to travel to Nigeria and to suspend its efforts to supply cement upon Nigeria's fraudulent representation that plaintiff would be compensated. Federal jurisdiction over these two defendants is asserted on the basis of the jurisdictional section of the FSIA, 28 U.S.C. § 1330. Plaintiff also claims that Morgan breached its duty toward plaintiff under Morgan's letter of credit by refusing to state the reasons for rejecting payment of the drafts. Plaintiff asserts pendent jurisdiction over this claim against Morgan. Plaintiff's claim against London arises from the false bills of lading. Plaintiff alleges that it was prevented from fulfilling its contracts as a result of London's deceitful conduct.

## II.

Because pendent jurisdiction is based upon the existence of federal jurisdiction over a related claim, *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), this Court must first determine whether 28 U.S.C. § 1330 properly supports federal jurisdiction over plaintiff's action against Nigeria and CBN. Defendant London asserts that the Second Circuit's recent decision in *Verlinden B.V. v. Central Bank of Nigeria*, 647 F.2d 320 (2d Cir.1981), *cert. granted* 454 U.S. 1140, 102 S.Ct. 997, 71 L.Ed.2d 291 (1982), is dispositive of his contention that plaintiff cannot establish federal jurisdiction simply by suing a foreign sovereign under 28 U.S.C. § 1330. London's argument, however, is based

upon a misreading of *Verlinden. Verlinden,* which arose out of the same program of cement purchases by Nigeria which resulted in the instant controversy, involved a suit by an *alien* plaintiff against a foreign sovereign under 28 U.S.C. § 1330. The Second Circuit held that although 28 U.S.C. § 1330 purported to give the district courts original jurisdiction over suits against foreign sovereigns, there is no constitutional basis for that grant when the plaintiff is an alien alleging nonfederal causes of action. *Verlinden,* 647 F.2d at 330.

Any exercise of federal jurisdiction must, of course, have both a constitutional and a statutory basis. *Kline v. Burke Construction Co.,* 260 U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed.2d 226 (1922); *Sheldon v. Sill,* 8 How. 441, 448, 12 L.Ed. 1147 (1850). In *Verlinden,* the Court ruled that although 28 U.S.C. § 1330 provided the necessary statutory foundation, 647 F.2d at 324, there was no constitutional grant of power to the federal courts under Article III § 2, cl. 1 of the Constitution. The court held that a claim grounded on § 1330, but asserting only nonfederal rights to relief, was not a claim "arising under" the laws of the United States, as that term is used in Article III. 647 F.2d at 327–30. In addition, because *Verlinden* was a suit between two aliens, it could not fit under the diversity grant of Article III, § 2, cl. 1 which provides, *inter alia,* that "the judicial power shall extend to ... Controversies ... between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." See 647 F.2d at 325.

Unlike the situation in *Verlinden,* it is precisely this clause that provides the constitutional basis for the exercise of federal jurisdiction in the instant case. Plaintiff is a citizen of New York. Defendants Nigeria and CBN are foreign states.[2] Thus there exists controversy between a United States citizen and a foreign state, squarely

within the Article III grant of jurisdiction. The fact that defendants Morgan and London are also New York citizens does not affect this grant because Article III, unlike the statutory grant of diversity jurisdiction, 28 U.S.C. § 1332, requires only partial, as opposed to complete, diversity. *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 531, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967). Plaintiff, therefore, has properly invoked this Court's jurisdiction under 28 U.S.C. § 1330 and Article III, § 2, cl. 1 of the Constitution.

### III.

Having determined that there is federal jurisdiction over the claims against the Nigerian defendants, we must now decide whether there is pendent party jurisdiction over the claim against London. In *In re Investors Funding Corporation of New York Securities Litigation,* 523 F.Supp. 550 (S.D.N.Y.1980) (Conner, J.), this Court set forth the principles that guide its exercise of pendent party jurisdiction. See 523 F.Supp. at 560–62. Although it is unnecessary to restate those principles fully here, a brief summary of the basic criteria is appropriate.

Pendent party jurisdiction is typically sought by one who has no claim against the pendent party for which there is federal jurisdiction, but only a related claim against another party over which there is federal jurisdiction. It is to be distinguished from pendent claim jurisdiction, which preserves the existence of a claim over which the court has federal jurisdiction, and another claim involving the same parties lacking an independent ground of federal jurisdiction. Plaintiff's theory in this case is that its claim against London is pendent to its claims against Nigeria and CBN over which this Court has federal jurisdiction.

---

2. The Second Circuit ruled in *Verlinden* that the CBN is an "instrumentality of a foreign state" under 28 U.S.C. § 1603(b), and therefore is a "foreign state" under § 1603(a). Thus, the claims against both Nigeria and CBN are suits "against a foreign state" under § 1330. 647 F.2d at 325. Obviously the claims against Nigeria and CBN are controversies with "foreign states, citizens or subjects" within Article III of the Constitution.

■ The exercise of pendent jurisdiction over a nonfederal claim is appropriate where (1) the court has power under Article III of the Constitution, measured by whether the pendent claim and the federal jurisdiction-conferring claim "derive from a common nucleus of operative fact," and (2) the court in its discretion determines to exercise that jurisdiction, based upon "considerations of judicial economy, convenience, and fairness to litigants." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). Any exercise of pendent party jurisdiction is subject not only to these two requirements of *Gibbs*, but also to the additional condition that Congress, in the statute conferring federal jurisdiction over the main claim, has not expressly or by implication negated the existence of pendent party jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976). This result reflects the fundamental precept that federal jurisdiction may not surpass the limitations imposed by either the Constitution or Congress. See *id.* at 15, 96 S.Ct. at 2420. The *Aldinger* requirement quickly manifested itself in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), where the Court ruled that no pendent party jurisdiction could be exerted over a nondiverse defendant when federal jurisdiction is based solely on diversity grounds. See 437 U.S. at 377, 98 S.Ct. at 2404. The Court reasoned that the Congressional mandate of complete diversity set out in 28 U.S.C. § 1332(a)(1) implicitly negated the exercise of such jurisdiction by the federal courts. *Id.* at 374, 98 S.Ct. at 2403.

■ London contends that the *Kroger* result controls the disposition of his motion. Defendant's argument, however, overstates the breadth of the *Kroger* ruling. *Kroger* holds only that the Congressional requirement of complete diversity in 28 U.S.C. § 1332 negates the existence of pendent jurisdiction over a nondiverse party. *Id.* at 377, 98 S.Ct. at 2404. In the instant case, however, 28 U.S.C. § 1332 is not the operative Congressional grant of federal jurisdiction: instead, plaintiff invokes federal jurisdiction under 28 U.S.C. § 1330. Unlike the statutory grant under § 1332, § 1330 does not preclude the existence of pendent party jurisdiction over a nondiverse defendant. To the contrary, this section of the FSIA evinces a Congressional intent to broaden federal jurisdiction by allowing all suits growing out of transactions involving foreign sovereigns to be heard in a federal forum. Any exercise of pendent party jurisdiction over London would, therefore, be entirely consistent with the statutory grant of federal jurisdiction in this case.

■ This conclusion does not necessitate the denial of London's motion, however, for any exercise of pendent party jurisdiction must also satisfy the two *Gibbs* criteria. Although plaintiff's claims against London and against Nigeria and CBN appear superficially to derive from a "common nucleus of operative fact," a closer examination leads this Court to conclude that they do not. Plaintiff's right to relief against London depends upon the fraudulent nature of the representations made and documents given to it by London. On the other hand, plaintiff's actions against Nigeria and CBN concern the existence of contracts and other activities that did not involve London.

Plaintiff's success against London does not depend upon the facts underlying its claims against Nigeria and CBN, except insofar as background proof of an existing contract to deliver cement would be necessary to prove damages. The existence of the underlying contract with Nigeria is not likely to be denied; thus, the trial of the claim against London will probably involve little or no issues or testimony common to the trial of the claim against the Nigerian defendants. Because there is no "common nucleus of operative fact," the claim against London is not within the pendent jurisdiction of this Court and must be dismissed.[3] See *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

SO ORDERED.

---

3. Even if this Court were to assume that these claims arise from a common nucleus of fact, it

**6**

## ON MOTION FOR PARTIAL SUMMARY JUDGMENTS

The instant action involves but one of many disputes that have followed in the wake of the huge and ill-conceived program of cement purchases by the Federal Republic of Nigeria ("Nigeria") during 1974 and 1975. In the specific transaction at issue in this case,[1] plaintiff Tri-Ex Enterprises, Inc. ("Tri-Ex") agreed in April 1974 to supply to Nigeria 500,000 metric tons of cement at a price of $49.50 per metric ton. To facilitate payment for the cement, the Central Bank of Nigeria ("CBN") issued through Morgan Guaranty Trust Company ("Morgan") an irrevocable letter of credit in favor of Tri-Ex.[2]

During the middle of 1975, a massive backlog of ships waiting to discharge their cargos developed in the Port of Lagos, Nigeria. In response to this congestion, Nigeria and CBN took certain actions during the late summer and fall of 1975 to regulate the arrival of cement-carrying ships at the Port. First, on August 9, 1975, Nigeria issued Government Directive No. 1434 which required, *inter alia*, that all shippers give the Nigerian Port Authority two months' advance notice of a ship's scheduled arrival and of the contents of the ship's cargo, and obtain prior approval from the Port Authority for the sailing. *See* Ex. A. to Berger Aff. Second, in September 1975, Nigeria sent Tri-Ex a Telex directing Tri-Ex to suspend further delivery of cement to Nigeria. *See* Ex. B to Berger Aff. Then, on September 30, CBN Telexed Morgan and directed Morgan not to pay under any letter of credit without first obtaining confirmation from CBN that the shipment for which payment was being requested had been cleared by the Nigerian Port Authority. *See* Ex. C to Berger Aff. Finally, on December 19, 1975, Nigeria promulgated Decree No. 40, which imposed criminal penalties for unauthorized entry into a Nigerian port. *See Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 305 (2d Cir.), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982).

In *Decor by Nikkei International, Inc. v. Federal Republic of Nigeria*, 497 F.Supp. 893 (S.D.N.Y.1980), *aff'd*, 647 F.2d 300 (2d Cir.1981), *cert. denied, sub nom. Federal Republic of Nigeria v. Texas Trading & Milling Corp.*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982), Judge Pierce of this Court ruled that these same acts by Nigeria and CBN constituted the anticipatory breach of other contracts materially identical to those at issue in the instant case. *Nikkei* was a consolidated action involving three separate suits by individual suppliers of cement under contracts entered into, as in the instant case, during Nigeria's prolific period of cement procurement. With respect to the defendants' breach of their obligations under the letters of credit, Judge Pierce found:

The evidence submitted at trial indicates that Nigeria did not intend to provide Nikkei or any of the other plaintiffs herein with the certificates they would need to obtain payment due from Morgan under the letters of credit as amended un-

would be an unwise exercise of discretion to try them in the same lawsuit. The evidence involved in plaintiff's claim against London is primarily concerned with the extent and fraudulent nature of London's dealing with plaintiff. These transactions are wholly irrelevant to plaintiff's claims against Nigeria and CBN, and their inclusion in the same lawsuit can serve only to confuse and delay the just resolution of the main claims. At the same time, plaintiff's success against London is not dependent upon all of the complex issues that will be raised in the trial of the main claims. For these reasons, consolidating plaintiff's claim against London with its claims against CBN and Nigeria will overburden and complicate this federal lawsuit, contrary to any notions of judicial efficiency and fairness. Wisdom dictates that plaintiff's claim against London be pursued in a separate state court action.

1. The underlying facts alleged in plaintiff's complaint are set forth in detail in this Court's prior Opinion and Order dated September 22, 1982. *See Tri-Ex Enterprises, Inc. v. Morgan Guaranty Trust Company of New York, et al.*, supra, at 3.

2. The original letter of credit was amended several times. *See, e.g.*, Pl. ex. A; Def. ex. #4.

less they agreed to cancel their cement contracts.

497 F.Supp. at 900.

Moreover, Judge Pierce ruled that Nigeria's and CBN's conduct in August through December 1975 "clearly demonstrate[s] Nigeria's intent to terminate its performance under these [cement] contracts." *Id.* at 908.

On the basis of these findings, Tri-Ex contends that Nigeria and CBN should be collaterally estopped in the instant proceeding from arguing that they did not anticipatorily breach their contracts with Tri-Ex. Consequently, plaintiff seeks summary judgment pursuant to Rule 56, F.R.Civ.P., on the issue of Nigeria's and CBN's liability for anticipatory repudiation of their contracts with Tri-Ex. For the reasons stated below, that motion is denied.

*Discussion*

■ Under the doctrine of collateral estoppel, often referred to as issue preclusion, once a court has actually and necessarily decided an issue of law or fact, that determination will bar relitigation of the issue in a subsequent suit on a different cause of action involving a party to the prior lawsuit.[3] *Montana v. United States,* 440 U.S. 147, 152, 99 S.Ct. 970, 972, 59 L.Ed.2d 210 (1979). It is undisputed that a litigant who was not a party to the first action may assert collateral estoppel offensively in a subsequent proceeding against the party who lost the decided issue in the prior case. *See Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). But although this offensive use is permitted, the trial court has broad discretion to determine when it should be applied. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). If for any reason it would be unfair to a defendant to bind him by a prior finding, the court should not allow the use of offensive collateral estoppel. *See id.*

■ It is simply unwarranted, at this stage of the instant litigation, to determine conclusively that Nigeria and CBN anticipatorily repudiated their contracts with Tri-Ex based solely upon the findings in *Nikkei.* A contract by its very nature embodies rights and duties on both sides. Although the same actions that constituted the anticipatory breach in *Nikkei* are present here, this Court is not prepared to rule on the basis of *Nikkei* that a breach of the Tri-Ex contracts occurred until it is satisfied that Tri-Ex was situated similarly to the plaintiffs in that case.[4]

The fact that the same material terms exist in the Tri-Ex contracts as existed in the *Nikkei* contracts does not by itself place the plaintiffs in analogous positions. Nigeria and CBN have alleged several defenses to Tri-Ex's claim. Among those defenses are allegations that the contracts are unenforceable because Tri-Ex procured them illegally and performed under them fraudulently, and that, even if they are enforceable, Tri-Ex's own actions after the fall of 1975 demonstrate that no anticipatory breach occurred. Clearly these defenses present material issues of fact which preclude the application of collateral estoppel and the granting of summary judgment at this point. The Court obviously cannot rule that defendants have anticipatorily

---

**3.** To invoke collateral estoppel against a party to a prior action, a litigant must demonstrate, at minimum, that:

    (1) the same issue is involved in both the prior and current actions;

    (2) the issue was actually litigated in the first action after a full and fair opportunity for litigation;

    (3) the issue was actually decided in the first action and the decision is final; and

    (4) the decision on that issue was necessary to a resolution of the first action.

See 18 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure § 4416 at 137–38.

**4.** This is not to say that Tri-Ex must demonstrate that it was ready, willing and able to perform at the time of the anticipatory breach in order to show that it was situated similarly to the *Nikkei* plaintiffs. As Tri-Ex aptly notes, a plaintiff's inability to perform is a defense to a claim for damages arising from the breach but is not related to the occurrence of the breach itself. *Cf. Scholle v. Cuban-Venezuelan Oil Voting Trust,* 285 F.2d 318, 320 (2d Cir.1960).

8

breached their contracts unless it finds, as a matter of law, that enforceable contracts exist. The issues of fact preclude such a ruling.

This is not to say, as Nigeria and CBN contend, that simply because the Tri-Ex agreement is a separate physical contract from the contracts in *Nikkei* it is necessarily not susceptible to the application of collateral estoppel. Although contracts may involve different parties, they are not necessarily unique in the same way that parcels of land are considered by the law to be unique. Thus, unlike cases involving land, ordinary contract actions are not automatically immune from the application of collateral estoppel. *Cf. Milens of California v. Richmond Redevelopment Agency*, 665 F.2d 906, 908 (9th Cir.1982) (since each parcel of real estate is unique, prior adjudication that city agency liable for inverse condemnation on one property not binding on question whether same agency liable for identical action on adjoining property).

The Court does not intend, in the instant case, to retry the question whether defendants' actions constitute an anticipatory breach of their contracts. If defendants fail to establish their affirmative defenses at trial, the Court will at that time apply collateral estoppel and rule that defendants have anticipatorily breached their obligations to Tri-Ex. At this stage of the proceeding, however, preliminary issues of fact concerning the existence of an enforceable contract preclude the Court from granting Tri-Ex's motion.

Accordingly, plaintiff's motion for partial summary judgment must be denied.

SO ORDERED.