OPINION OF THE COURT
Alain M. Bourgeois, J.
The plaintiff, Wayne Overton, stands convicted, under indictment No. 2971/84, of a series of felonies and, pursuant to Penal Law § 70.02, must be sentenced by this court to an indeterminate term of imprisonment in a Department of Correctional Services (DOCS) facility. In the instant proceeding, he seeks an order, pursuant to CPLR 3212, granting summary judgment and (a) declaring DOCS Directive No. 4914 unconstitutional as applied to him and (b) enjoining the defendants, the Department of Correctional Services and Thomas A. Coughlin, III, its Commissioner, from enforcing such directive insofar as it requires plaintiff to submit to the shaving of his beard and the cutting of his hair.
Defense counsel contends initially that this court, having been designated a part of the Criminal Term of the Supreme *296 Court, is not the appropriate forum for the resolution of the instant proceeding. Citing Judiciary Law § 147-a defendant contends that this matter is not "business which regularly comes before the term” of this court and should therefore be submitted for resolution to a part within the Civil Term of the Supreme Court of the County of Kings.
The matter was referred to this part by the Justice presiding in Special Term, Part 1 of the Supreme Court, a Civil Term Part. It was so referred because it was in this part that plaintiff’s felony convictions, under indictment No. 2974/84, were rendered, and it is before me that the petitioner must appear for sentencing thereon.
Authority for the referral of the instant civil action to this part is found in Administrative Order ADM 80-0220, which amended Rules of the Kings County Supreme Court § 751.1 (22 NYCRR). That order, designed to derive maximum benefit from the availability of judicial resources, permits a Justice of the Criminal Term to be additionally assigned to preside over a Civil Trial Term Part. (ADM 80-0220, dated Feb. 20, 1981, promulgated by Honorable Milton Mollen, Presiding Justice of the App Div, 2d Dept.)
This court has continuing responsibility for the imposition of an indeterminate term of incarceration upon the plaintiff and for his commitment to the custody and control of the defendant (the predicate for the irreparable harm alleged herein). The referral of the instant civil proceeding to this part by the Justice presiding in Special Term, Part 1 (as approved by the Administrative Justice of the Supreme Court, Kings County) was proper.
Department of Correctional Services Directive No. 4914 requires that "[mjales received [as sentenced prisoners within the State correctional system] shall get an initial haircut and shave for reasons of health and sanitation as well as to permit the taking of the initial identification photograph.”
Plaintiff Wayne Overton initially sought an order (a) declaring that enforcement of DOCS Directive No. 4914 would violate his rights to the free exercise of religion and to the equal protection of the laws, and (b) enjoining defendants from enforcing such directive.
Plaintiff’s application for injunctive relief has been rendered academic by the court’s stated determination not to impose sentence on the criminal charges on which he stands convicted prior to resolution of the constitutional arguments here at issue.
*297 The remaining issues having been framed through the submission of voluminous papers, the parties cross-moved for summary judgment.
The plaintiff, an avowed Rastafarian, contends that enforcement of DOCS Directive No. 4914 would violate his right to the free exercise of religion and to the equal protection of the laws under US Constitution 1st and 14th Amendments, NY Constitution, article I, §§ 3, 11 and Correction Law § 610.
The defendants contend that Rastafarianism is not a religion and that the legitimate security needs of the prison system require initial photographs of received inmates in a clean-shaven, close-haired state.
"[W]ith the closing of the prison doors behind him an inmate loses, or must endure substantial limitations on, many rights and privileges he previously enjoyed, a status justified by the character of our penal system” (Matter of Rivera v Smith, 63 NY2d 501, 510 [1984]). However, a prisoner does not lose all rights upon being convicted of a crime — he is still entitled to the free exercise of religion (LaReau v MacDougall, 473 F2d 974 [2d Cir], cert denied 414 US 878 [1973]). Prison authorities may impose reasonable restrictions on this right (Matter of Shahid v Coughlin, 83 AD2d 8, affd on opn below 56 NY2d 987 [1982]).
The plaintiff contends that he is a devout Rastafarian and that the tenets of his religion forbid the cutting of his hair or the shaving of his beard.
While the defendants do not contest the sincerity of the plaintiffs beliefs, they contend that Rastafarianism is not a "bona fide” religion, but rather merely a set of personal, political beliefs. They therefore urge that an analysis in terms of the constitutional right to the free exercise of religion is inappropriate herein.
Particular beliefs, if determined to be religious in nature, may be accorded 1st Amendment protection. "A court’s task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant’s scheme of things” (Africa v Commonwealth of Pa., 662 F2d 1025, 1030 [3d Cir], cert denied 456 US 908 [1982]; United States v Seeger, 380 US 163 [1965]; Callahan v Woods, 658 F2d 679 [9th Cir 1981]).
Since the sincerity of the plaintiffs beliefs is not in contention, the court herein need only determine whether those beliefs are "religious” and, therefore, protected.
In determining whether one’s beliefs are religious, courts *298 have moved from defining "religious” in terms of one’s views of his relations to his Creator (Davis v Beason, 133 US 333 [1890]) to whether one’s beliefs are "based upon a power or being, or upon a faith, to which all else is subordinate or upon which all else is ultimately dependent” (United States v Seeger, supra, at p 176; Africa v Commonwealth of Pa., supra).
This "parallel belief’ approach has been widely adopted (Welsh v United States, 398 US 333 [1970] [religion includes nontheistic ideologies]; Torcaso v Watkins, 367 US 488 [1961]; Malnak v Yogi, 592 F2d 197, 207 [3d Cir 1979, Adams, J., concurring] ["beliefs holding the same important position for members of one of the new religions as the traditional faith holds for more orthodox believers are entitled to the same treatment as the traditional beliefs”]; Founding Church of Scientology v United States, 409 F2d 1146 [DC Cir], cert denied 396 US 963 [1969]; Alim v Byrne, 521 F Supp 1039 [DNJ 1980]).
Courts "must avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs. 'Religions now accepted were persecuted, unpopular and condemned at their inception.’ ” (Africa v Commonwealth of Pa., supra, at p 1031, citing United States v Kuch, 288 F Supp 439, 443 [DDC 1968].)
More recently, the "parallel belief’ approach has been refined and extended through a "definition by analogy” analysis.
In Malnak v Yogi (supra), the court, applying such analysis, set forth three criteria in the determination of the existence of a religion: (1) a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters; (2) a religion is comprehensive in nature-belief-system rather than an isolated teaching; and (3) a religion consists of certain formal and external signs (see also, Africa v Commonwealth of Pa., supra).
The judiciary’s inquiry into whether beliefs are to be accorded 1st Amendment protection is limited. "This limited inquiry reflects our society’s abiding acceptance and tolerance of the unorthodox belief. Indeed, the blessings of our democracy are ensconced in the first amendment’s unflinching pledge to allow our citizenry to explore diverse religious beliefs in accordance with the dictates of their conscience. This freedom to believe as one chooses without secular interference evinces an abiding confidence in the benefits attendant *299 to a truly pluralistic state. The freedom to exercise religious beliefs cannot be made contingent on the objective truth of such beliefs” (Patrick v LeFevre, 745 F2d 153, 157 [2d Cir 1984] ).
"Properly cognizant of the judiciary’s incapacity to judge the religious nature of an adherent’s beliefs, courts have jettisoned the objective, content-based approach previously employed to define religious belief, see Davis v. Beason, [supra]; Reynolds v. United States, 98 U.S. 145 * * * (1879), in favor of a more subjective definition of religion, which examines an individual’s inward attitudes towards a particular belief system” (Patrick v LeFevre, supra, at p 157; Thomas v Review Bd., Ind. Employment Sec. Div., 450 US 707 [1981]; United States v Seeger, supra; United States v Ballard, 322 US 78 [1944]; United States v Sun Myung Moon, 718 F2d 1210 [2d Cir 1983, cert denied 466 US 971; International Socy. for Krishna Consciousness v Barber, 650 F2d 430, 442 [2d Cir 1981]; United States v Kauten, 133 F2d 703 [2d Cir 1943]).
Adopting the Seeger test of religion in one’s own scheme of things, "it follows concomitantly that the claim of the adherent 'that his belief is an essential part of a religious faith must be given great weight.’ * * * Impulses prompted by dictates of conscience as well as those engendered by divine commands are therefore safeguarded against secular intervention, so long as the claimant conceives of the beliefs as religious in nature” (Patrick v LeFevre, supra, at p 158; United States v Seeger, 380 US, at p 184).
The court finds that Rastafarianism meets such a standard. Central to the Rastafarian belief system is an acceptance of the divinity of Haile Selassie characterized as the "Living God” and the status of the believers as "God’s chosen people” (see, Smith et al., The Rastafari Movement in Kingston, Jamaica, U C of W Indies, Inst of Soc & Econ Research [1960]). "Rastafari are not political rebels * * * there is a religious and spiritual basis for their entire belief system * * * the fundamental principles invoked in the holy scripture * * * are the backbone for their growing their hair in the long, natural dreadlocks” (affidavit of Tracy Nicholas, Oct. 22, 1985) .
The principal behavior, prohibitions and observances of the Rastafarian people are grounded in biblical passages together with the Ten Commandments (Smith et al., op. cit., at 10). "The basic quest of Rasta is the maintenance, among all *300 people, of divine principles of life. All of these principles— honesty, loyalty, fear and love of God, self-attainment — are laid down in the Bible and are not meant to be added to, diminished, or otherwise altered by man” (Nicholas, Rastafari: A Way of Life [1979]).
The court finds that Mr. Overton’s beliefs are, in his own scheme of things, of a religious character. He has been a practicing member of the Rastafarian faith since he was 14 years of age and follows its dietary, dress, speech and hairstyle restrictions.
Rather than being a "masquerade designed to obtain First Amendment protection for acts which otherwise would be unlawful and/or reasonably disallowed by the various prison authorities but for the attempts which have been and are being made to classify them as 'religious’ and, therefore, presumably protected by the First Amendment” (Theriault v Silber, 453 F Supp 254, 260 [WD Tex 1978]), the tenets of Rastafarianism are accepted and followed by large numbers of people around the world.
Although some may find the principles of Rastafarianism to be unconventional, "[m]en may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others” (United States v Ballard, supra, at p 86).
The court finds, therefore, that Mr. Overton’s beliefs are "religious” in nature and, therefore, deserving of 1st Amendment protection.
In assessing the constitutionality of DOCS Directive No. 4914, defense counsel contends that this court must defer to the expert judgment of the prison officials and find that Mr. Overton has not proven " 'by "substantial evidence * * * that the officials have exaggerated their response” ’ ” to security considerations (Wilson v Schillinger, 761 F2d 921, 925 [3d Cir 1985]; St. Claire v Cuyler, 634 F2d 109, 114-115 [3d Cir 1980]).
The plaintiff, on the other hand, contends that "while deference must be accorded to the expertise and discretionary authority of prison officials, regulations which are more restrictive than necessary to carry out legitimate penological objectives cannot be left to stand” (Monroe v Bombard, 422 F Supp 211, 217 [SDNY 1976]; Pell v Procunier, 417 US 817, 829 [1974]; Procunier v Martinez, 416 US 396, 413 [1974]).
*301 While the defendants have urged that this court adopt and apply the "exaggerated response” test, it should be noted that, in the recent decision in Shabazz v O’Lane (— F2d — [Jan. 27, 1986]), the Third Circuit has itself abandoned that standard, concluding that such a test "which did not require any inquiry into the feasibility of accommodating prisoners’ religious practices, provides inadequate protection for their free exercise rights” (Shabazz v O’Lane, supra, at p —). The court (at p —) explicitly rejected the standard urged by defendant herein, accepting in its stead a standard requiring the State to demonstrate that "no reasonable method exists by which appellant’s religious rights can be accommodated without creating bona fide security problems.”
Mr. Overton relies on the recent Appellate Division, Second Department, decision in Lewis v Commissioner of Dept. of Correctional Servs. (115 AD2d 597 [1985]) in support of the applicability of the "least restrictive alternative” test.
In the Lewis case (supra), the prisoner in question was also an avowed Rastafarian who sought to have DOCS Directive No. 4914 declared unconstitutional as applied to him. Contrary to defense counsel’s assertions, this court finds that the Appellate Division in the Lewis decision resolved the issue of which standard is to be applied in determining the constitutionality of Directive No. 4914.
On page 598 of the decision dated December 16, 1985, the court states "[t]he hearing court concluded, and we agree, that all the asserted objectives of a haircut can be achieved through alternatives that impinge less drastically on respondent’s First Amendment rights than directing him to cut his hair (see, Procunier v Martinez [supra]; Abdul Wali v Coughlin, 754 F2d 1015; Davidson v Scully, 694 F2d 50). Appellant has made no showing that implementation of these alternatives would cause any greater 'increased administrative burden * * * than that normally encountered when the constitutional rights of prisoners are enforced’ (Teterud v Burns, 522 F2d 357, 361). Since such alternatives are available, enforcing the directive’s haircut requirement would violate respondent’s religious rights unnecessarily.”
This court finds therefore, in compliance with the Appellate Division’s determination of the issues, that DOCS Directive No. 4914 is, in requiring an initial haircut, unconstitutional as applied to Mr. Overton and that less restrictive alternatives are available to achieve the Department of Correctional Services objectives.
*302 The Department of Correctional Services contends that the provisions of Directive No. 4914 are founded in reasons both of security and sanitation. In accordance with the determination of the Appellate Division, Second Department, in Lewis v Commissioner of Dept. of Correctional Servs. (supra), the court finds that such legitimate objectives of the DOCS can be achieved by means of tying back Mr. Overton’s hair so as to afford a full and unobstructed facial view and by the use of shampoo.
The Appellate Division, in the Lewis case (supra), did not rule upon the issue of the shaving requirement of the directive here in question. The defendant herein contends that the shaving of Mr. Overton’s beard is necessary to the obtaining, for security purposes, of a clear and unobstructed facial photograph of the petitioner. The plaintiff, alleging the sparcity of his facial hair, contends that such a photograph can be obtained with his beard intact.
The court finds that portion of the directive in question that mandates the shaving of plaintiffs beard to be valid and enforceable. The DOCS has a legitimate security need for an unobstructed facial photograph of the plaintiff. While the wispiness of the plaintiff’s beard may leave visible his facial bone structure, the court is unwilling to substitute its judgment for that of the defendant on the question of the adequacy, for security purposes, of a photograph of the plaintiff unshaven.
The presence of facial hair, however sparse or wispy, may still be misleading or confusing in a circumstance calling for subsequent identification. Since the easiest and fastest way for an inmate to alter his appearance is by shaving his beard or moustache, "[t]he State truly has no less intrusive manner of obtaining the clean-shaven photograph than removing the inmate’s facial hair” (Phillips v Coughlin, 586 F Supp 1281, 1285 [SDNY 1984]). The prisoner in Phillips was also a Rastafarian and the court held that the initial shave procedure of Directive No. 4914 is the "least intrusive method available for satisfying a compelling penological interest, and in this instance, that it is a justified encroachment on plaintiffs free exercise of his religion” (Phillips v Coughlin, supra, at p 1285).
Although the growth of Mr. Overton’s facial hair may be less dense than that of other prisoners, the court finds that shaving is the least restrictive means available for the Depart *303 ment of Correctional Services to obtain a completely unobstructed view of Mr. Overton’s face.
The plaintiff additionally argues that Directive No. 4914 violates his right to equal protection of the law because the initial haircut requirement applies only to male prisoners and not to female prisoners. In light of this court’s determination that the initial haircutting requirement violates the plaintiffs right to freely practice his religion, the court need not rule upon the equal protection argument.
The court finds that the plaintiff has satisfied his burden of demonstrating that there are no issues of fact which require a trial. The defendant has not provided the court with any evidence to the contrary. Accordingly, the plaintiff’s motion for summary judgment is granted to the extent that the defendant shall refrain from cutting the plaintiffs hair. However, that branch of the plaintiffs motion addressed to the initial shaving requirement is denied. The defendant’s cross motion for summary judgment is therefore denied as to the haircut requirement and granted as to the shaving requirement.