Thomas BENJAMIN, Errol Dunkley, Frank Forrest, Barrington Gray, Newton Hannon and Martin Spence, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Thomas A. COUGHLIN, Commissioner, New York State Department of Correctional Services; Stephen Dalsheim, Superintendent, Ossinging Correctional Facility; Eugene S. LeFevre, Superintendent, Clinton Correctional Facility; Harold Smith, Superintendent, Attica Correctional Facility, Defendants.

No. 79 Civ. 0232 (LLS).

United States District Court,
S.D. New York.

Aug. 29, 1986.

Prisoners' Legal Services of New York, Poughkeepsie, N.Y., for plaintiffs; Janet Packard, Michael Raskin, Robert Selcov, Stephen M. Latimer, David C. Leven, of counsel.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Tarquin Jay Bromley, Barbara B. Butler, Asst. Attys. Gen., of counsel.

## OPINION and ORDER

STANTON, District Judge.

This action was brought pursuant to 42 U.S.C. § 1983 by plaintiff class as members of the Rastafari faith against defendants Thomas A. Coughlin III, Commissioner of the New York State Department of Correctional Services ("DOCS") and the Superintendents of the facilities in which plaintiffs are now incarcerated. Plaintiffs seek a declaration that Rastafarianism is a religion, along with injunctive relief affording them the opportunity to meet as a religious

group and follow certain practices of their religion within prison, such as wearing their hair long and eating a special diet. Because some of its members have recently been placed in restrictive confinement for their refusal to cut their hair, plaintiff class now moves for preliminary relief to enjoin defendants from (1) refusing to recognize Rastafarianism as a religion; (2) requiring plaintiffs pursuant to Departmental Directive No. 4914 to have their hair cut while in defendants' custody; and (3) placing plaintiffs in involuntary protective custody because of their refusal to cut their hair.[1] After reviewing the motion for a preliminary injunction, the court raised the question whether the doctrine of collateral estoppel bars defendants from litigating the issues raised here, *see Williams v. Codd*, 459 F.Supp 804 (S.D.N.Y.1978); *see also Hedger Trans. Corp. v. Bushey & Sons, Inc.*, 186 F.2d 236 (2d Cir.1951); *cf. LaRocca v. Gold*, 662 F.2d 144, 148 (2d Cir.1981), and the parties have fully briefed that issue.

### Background

The present action was brought in January 1979. It was discontinued in April 1980 in contemplation of settlement, and reopened in March 1985.

Since its commencement, two New York State court cases involving the issues raised by this motion have been decided against the Commissioner of the Department of Correctional Services and in favor of two Rastafarian inmates.

The first, *Lewis v. Commissioner of the Department of Correctional Services*, No. 85–11167, slip op., (N.Y.S.Ct. August 1, 1985), *aff'd sub nom. People v. Lewis*, 115 A.D.2d 597, 496 N.Y.S.2d 258 (1985), was brought by a Rastafarian inmate to challenge the validity of DOCS Directive No.

4914, which requires all male inmates to submit to a haircut and shave for the taking of an initial identification photograph when newly incarcerated. He asserted that cutting his hair or beard violated his religious convictions. The defendant Commissioner argued that the prison facilities need a photograph of each inmate after a haircut and shave, showing his "facial features and contours unobstructed by hair", to facilitate apprehension of escaped convicts who might try to change their appearance by cutting their long hair. Both the Supreme Court, Queens County and the Appellate Division held that the state's objective of prisoner identification and security could be achieved through less restrictive means, by "pulling [the inmate's] locks back tightly behind the head for a photograph". 496 N.Y.S.2d at 260, *see People v. Lewis*, No. 85–11167, slip op. at 5. Both courts held that Directive No. 4914, in requiring an initial haircut, was unconstitutional as applied to the plaintiff inmate.

In the second case, *Overton v. Dept. of Correctional Services and Thomas A. Coughlin, III*, 131 Misc.2d 295, 499 N.Y. S.2d 860 (1986), another Rastafarian inmate challenged DOCS Directive No. 4914. The defendants there argued both that Rastafarianism is not a religion and that the legitimate security needs of the prison system required initial photographs of newly received inmates in a "clean-shaven, close-haired state". *Id.* 499 N.Y.S.2d at 862. Both sides moved for summary judgment. The court held that Rastafarianism is a religion and that inmates sincerely holding its beliefs are to be afforded First Amendment protection.[2] It held, "[i]n accordance with the determination ... in *People v. Lewis*", that DOCS Directive No. 4914 was unconstitutional as applied to the Rastafarian inmate and that the state's "legitimate

---

1. Plaintiffs assert three additional claims in the underlying action, that defendants (1) refuse to allow plaintiffs to gather for religious meetings; (2) do not provide plaintiffs with a diet consistent with Rastafarian dietary laws; and (3) do not permit plaintiffs to wear their religious headgear. Those claims are not in issue on this motion.

2. In neither *Lewis* nor *Overton* was the sincerity of the inmates's beliefs contested. Here, if defendants wish to challenge the sincerity of plaintiffs' beliefs, they may do so in an appropriate administrative hearing. *See Moskowitz v. Wilkinson*, 432 F.Supp. 947, 951 n. 13 (D.Conn. 1977).

[security] objectives ... can be achieved by means of tying back [the inmate's] hair so as to afford a full and unobstructed facial view". *Id.* at 865.

### Issue Preclusion Principles

■ The doctrine of collateral estoppel is that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *LaRocca v. Gold,* 662 F.2d at 148; *see Gramatan Home Investors Corp. v. Lopez,* 46 N.Y.2d 481, 414 N.Y.S.2d 308, 386 N.E.2d 1328 (1979). Title 28 U.S.C. § 1738 [3] requires federal courts to give preclusive effect to state court judgments whenever the courts of that state would do so. *See Allen v. McCurry,* 449 U.S. at 96, 101 S.Ct. at 415–16. "For the bar to apply: (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986); *Tri-Ex Enterprises, Inc. v. Morgan Guaranty Trust Co.,* 596 F.Supp. 1, 7 n. 3 (S.D.N.Y.1982); *Schwartz v. Public Administrator of County of Bronx,* 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).

"It is undisputed that a litigant who was not a party to the first action may assert collateral estoppel offensively in a subsequent proceeding against the party who lost the decided issue in the prior case." *Tri-Ex Enterprises v. Morgan Guaranty Trust Co.,* 596 F.Supp. at 7; *see Allen v. McCurry,* 449 U.S. at 95, 101 S.Ct. at 415; *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326–27, 99 S.Ct. 645, 649–50, 58

L.Ed.2d 552 (1979). The trial court has broad discretion to determine when to permit the offensive use of collateral estoppel, *see Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. at 331, 99 S.Ct. at 651–52, and should not allow it if it would be unfair to a defendant to bind him to the prior finding. *Ibid; see Tole S.A. v. Miller,* 530 F.Supp. 999, 1003 (S.D.N.Y.1981) *aff'd,* 697 F.2d 298 (2d Cir.1982) (former requirement of mutuality has been abandoned and "[i]n its place the courts have adopted a rule that non-mutual issue preclusion is permitted unless it would be unfair").

### Discussion

(a) Identity of Issues

The issues presented here are the ones litigated in *Lewis* and *Overton.* The New York Supreme Court in *Overton* squarely addressed and decided both that Rastafarianism is a religion and that DOCS Directive No. 4914 is unconstitutional in requiring a Rastafarian inmate to get an initial haircut. Both determinations were necessary for its decision. Earlier, *Lewis* held that these defendants could not constitutionally require a Rastafarian inmate to get an initial haircut upon commencement of his sentence, since the state could adequately achieve its security objectives by photographing the inmate with his hair pulled back.

The court in *Overton* stated the issues before it as follows (499 N.Y.S.2d at 861–62):

The remaining issues having been framed through the submission of voluminous papers, the parties cross-moved for summary judgment.

The plaintiff, an avowed Rastafarian, contends that enforcement of D.O.C.S. directive No. 4914 would violate his right to the free exercise of religion and to the equal protection of the laws under the First and Fourteenth Amendments of the

---

**3.** 28 U.S.C. § 1738 states:
"[J]udicial proceedings [of any court of any state] ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ..."

United States Constitution, Sections 3 and 11 of Article I of the New York State Constitution, and Section 610 of the New York State Correction Law.

The defendants contend that Rastafarianism is not a religion and that the legitimate security needs of the prison system require initial photographs of received inmates in a clean-shaven, close-haired state.

Obliged to "determine whether [Overton's] beliefs are 'religious' and, therefore, protected", (*id.* at 862) the court discussed the law for five pages and held, "the court finds that Rastafarianism meets such a standard" (*id.* at 863) and plaintiff's beliefs "are 'religious' in nature and, therefore, deserving of First Amendment protection" (*id.* at 864). The court then considered whether less restrictive alternatives to haircuts were available. It concluded, following the Appellate Division's determination in *Lewis*, that the DOCS' legitimate security objectives could be achieved by tying back the inmate's hair so as to afford a full and unobstructed facial view.

In *Lewis*, a Deputy Commissioner of DOCS testified at the hearing, in support of DOCS's assertion that Directive 4914 is needed for reasons of security and sanitation, and stated that (496 N.Y.S.2d at 259–60):

... photographs of each inmate are taken after the haircut and shave so that DOCS has a picture that shows the facial features and contours unobstructed by hair. Such photographs can facilitate the apprehension of escaped convicts, especially if they drastically change their appearances by cutting off long hair. He also noted that the haircut makes it easier to decontaminate incoming prisoners of lice.

Nonetheless, the Supreme Court, Queens County (*id.* at 260):

... found that the identification objective would be fully achieved by pulling respondent's locks back tightly behind his head for a photograph so they could not be seen, did not obstruct a full facial view in any event, and enabled the pho-

tographer to obtain an accurate picture of the contours of his face and head. It found the same objectives could be achieved, in a similar manner, for side photographs.

The Appellate Division agreed and affirmed, concluding that (*ibid*):

Since such alternatives are available, enforcing the directive's haircut requirements would violate respondent's religious rights unnecessarily.

Defendants argue that those cases were different; that the issues in the state courts were "personal to the situations of the individual involved" (pointing to such language as that in *Overton*, 499 N.Y.S.2d at 865: the directive is "... unconstitutional as applied to Mr. Overton") while the claims in this case involve the rights of the entire class "and impacts [sic] the State's entire system of inmate reception and identification." Defs.' July 18, 1986 Brief (hereinafter "Defs. Brief") at 16–17.

No such difference can be extracted from the cases. It is immaterial that plaintiffs Lewis and Overton did not challenge Directive 4914 as unconstitutional on its face, but only "as applied" to them, *cf. Kines v. Day*, 754 F.2d 28, 30 (1st Cir.1985) ("challenging a rule as applied often requires more specific allegations of harm than are necessary to test facial validity"), for the holdings apply equally to others similarly situated. The "as applied" analysis does not mean the holdings are limited to those plaintiffs only. Nothing in *Lewis* or *Overton* indicates that those courts rested their decisions on particular characteristics of the individual plaintiffs or distinguished them from other Rastafarian inmates. To the contrary, the *Overton* court rejected the argument that Mr. Overton's beard is so wispy that he should be excepted from the general rule requiring a clean shaven photograph. Rather, the courts focused on plaintiffs as members of the Rastafari faith and on their interests in adhering to the tenets of that faith. *Compare Wright v. Raines*, 457 F.Supp. 1082, 1090 (D.Kan.1978) (where plaintiff inmate of Sikh faith challenged prison regulation pre-

venting growth of long hair, court held that defendants were prohibited from enforcing regulation against "a sincere adherent of a recognized religion which requires long hair and a beard as one of its fundamental tenets").

The issues decided by the state courts in *Lewis* and *Overton* are identical to the ones raised by the present application. Indeed, the defendants' brief to the Appellate Division in *Lewis* advised that court that the "issue as to whether Rastafarianism is a religion is being litigated in *Overton*" and this case. (Exh. G to Bromley affidavit of July 18, 1986, p. 3 n.*) The question whether the state can place Rastafarian inmates in involuntary "protective custody" if they refuse to cut their hair is no more than a restatement of the issue whether the defendants can enforce Directive 4914 against Rastafarian inmates on security grounds.[4]

**(b) Full and Fair Opportunity to Litigate**

Offensive use of collateral estoppel should not be permitted where it would be unfair to the party against whom it is asserted. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. at 330, 99 S.Ct. at 651. To determine whether a party has had a full and fair opportunity to litigate an issue in a prior action, a court must examine "the realities of [the prior] litigation", *Schwartz v. Public Admin. of Co. of Bronx*, 298 N.Y.S.2d at 961, 246 N.E.2d at 729; *see Winters v. Lavine*, 574 F.2d 46, 59 n. 14 (2d Cir.1978), "including the context and other circumstances which ... may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him". *People v. Plevy*, 52 N.Y.2d 58, 436 N.Y.S.2d 224, 228, 417 N.E.2d 518, 522 (1980).

Defendants claim that they "did not fully litigate in state court the broad issues present in the case at bar precisely because

of the pendency of this action." Defs. Brief at 18. They assert that "[b]y agreement of the parties and in recognition of the federal case, no formal or informal discovery by way of document exchange, interrogatories or depositions took place [in the state cases]". (Aff. of Tarquin Jay Bromley, sworn to July 18, 1986, p. 5).

In *Lewis*, the court held a hearing, at which Philip Coombe, Deputy Commissioner for Facility Operations for DOCS, testified for defendants in the presence of plaintiff Lewis. His testimony is set forth at p. 7 above, as summarized by the Appellate Division (496 N.Y.S.2d at 259–60).

In *Overton*, on cross-motions for summary judgment the defendants submitted the affidavits of Mr. Coombe and Tarquin Jay Bromley, Esq., defendants' attorney, and two state court orders requiring two Rastafarian inmates to cut their hair upon commencement of their sentences. Plaintiff submitted affidavits and various articles and materials on Rastafarianism. Defendants informed that court that "if [it] did not grant summary judgment in favor of defendants, they required a full evidentiary hearing concerning the rationale for the Directive and their position that there was no less restrictive alternative than the initial haircut and shave." Bromley Aff. at 6–7. Defendants claim that they decided to proceed without discovery in *Overton* because they were preserving for this court the "broad based" or "larger" issues presented here, *see* Defs. Brief at 18, and because "the federal court [is] the appropriate forum for the deliberative resolution of disputes encompassing complex constitutional issues." *Id.* at 3.

In approaching these matters, a court should consider (1) the defendant's incentive to defend vigorously in the first action, focusing in particular on the size of the claim and the foreseeability of future litigation; (2) whether the judgment relied upon as a basis for the estoppel is itself

4. The records of the "due process hearings" accorded plaintiffs before they were placed in protective custody show that the only inquiry at the hearing was whether the Rastafarian inmate would allow his hair to be cut pursuant to Directive No. 4914. If not, he was placed in restrictive confinement.

inconsistent with previous judgments in favor of defendant; (3) whether the second action affords the defendant procedural opportunities unavailable in the first action; and (4) whether the plaintiff could easily have joined in the earlier action. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. at 329–31, 99 S.Ct. at 650–52; *see also Schwartz v. Public Admin. of Co. of Bronx,* 298 N.Y.S.2d at 961, 246 N.E.2d at 729–30; *Winters v. Lavine,* 574 F.2d at 59 n. 14. The underlying consideration appears to be "whether the party 'had more than adequate incentive to litigate long and hard' ", and whether it did so. *Winters v. Lavine,* 574 F.2d at 59 n. 14, citing *Vincent v. Thomson,* 79 Misc.2d 1029, 361 N.Y.S.2d 282, 295 (1974), *rev'd on other grounds,* 50 A.D.2d 211, 377 N.Y.S.2d 118 (1975); *see Zdanok v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d 944, 956 (2d Cir.1964).

■ These defendants had ample opportunity and incentive to litigate in the state court actions. Both *Lewis* and *Overton* involved challenges by a Rastafarian inmate to Directive 4914's requirement that they cut their hair upon commencement of their sentences. None of the state court opinions indicates that its holding is based on any particular personal characteristics of Lewis or Overton. None defers to a future decision by this court. Under the circumstances, and with knowledge of the class action pending in this court, defendants "clearly must have foreseen the possible preclusive consequences arising from an unfavorable decision in the [state court] action[s]." *Winters v. Lavine,* 574 F.2d at 59 n. 14; *see Zdanock v. Glidden Co., Durkee Famous Foods Div.,* 327 F.2d at 957 (C.J. Lumbard, concurring) ("I ... concur in the [application] of the collateral estoppel doctrine ... [since] ... it is clear that when the defendant elected to rest its case ...—a case involving merely five employees—it was fully aware of the Alexander case, then pending in the state court for about two years, which involved some 160 employee-plaintiffs). Mere concern for the precedential value the New York State court decisions must have in this case

should have provided the parties with incentive to litigate with vigor.

Defendants' decision in *Overton* to move for summary judgment and forego discovery was made at their own peril. Defendants are not entitled to federal relitigation of an issue because a strategy decision in a prior state court action may have been improvident.

It is well understood that "state courts have the same duty as the federal courts to uphold the federal Constitution", *United States ex rel. Hill v. Johnston,* 321 F.Supp. 818, 820 (S.D.N.Y.1971), and once a federal issue has been decided in state court, the litigants are not necessarily entitled to relitigate it in federal court. *See Allen v. McCurry,* 449 U.S. at 104, 101 S.Ct. at 419–20; *compare England v. Louisiana State Bd. of Med. Exam.,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (in cases where, but for the application of the abstention doctrine, the primary fact determination would have been by the District Court, a litigant may not be unwillingly deprived of that determination).

Defendants have submitted here several hundred photographs of Rastafarian inmates with their hair both long and short, i.e., "before" and "after" pictures, as evidence of the urgency of defendants' security interests. They assert that the photographs were not relevant to the *Overton* case "since the issue was solely Mr. Overton's own appearance". Defs. Brief at 22. As shown above, the issue in *Overton* necessarily affected all Rastafarians similarly situated, and DOCS must have been aware of the doctrine of *stare decisis.* Defendants claim that the photographs were not available at the time of the state court actions because plaintiffs had not provided a list of inmates who claimed to be Rastafarians, and that this federal action provides them "the procedural opportunity to put on [this] evidence". *Id.* at 21. Defendants, who had the Rastafarians in their custody, do not explain what efforts they made to obtain a list of them, or why the photographs could not equally well have

been assembled and used in *Overton. See Winters v. Lavine,* 574 F.2d at 60 n. 14.

Defendants make two additional arguments that they have not been provided a full and fair opportunity to litigate the issues presented in plaintiffs' motion. First, they assert that there are prior state court judgments inconsistent with *Lewis* and *Overton,* and decided in defendants' favor. While a court should not allow the use of offensive collateral estoppel against a defendant where "the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant", *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. at 330, 99 S.Ct. at 651, that is not the case here. The decisions proffered by defendants do not address the issue of Rastafarianism's judicial standing as a religion, nor the question of whether the directive impermissibly infringes on the rights of Rastafarianism's adherents since the state can achieve its objectives by a less intrusive means, which are the crucial issues here and in *Lewis* and *Overton.*

Second, defendants contend that this plaintiff class could have joined the state court actions, and its failure to do so amounts to an election to litigate in federal court. The Supreme Court has stated that it is not fair to a defendant to allow the use of offensive collateral estoppel "where a plaintiff could easily have joined in the earlier action". *Parklane,* 439 U.S. at 331, 99 S.Ct. at 652. The court's concern was that "the plaintiff has every incentive to adopt a 'wait and see' attitude, in the hope that the first action by another plaintiff will result in a favorable judgment." *Id.* at 330, 99 S.Ct. at 651. That is not the situation here. Far from assuming a "wait and see" attitude, the plaintiff class commenced this action in January 1979, six years prior to the *Lewis* and *Overton* actions.

Although the effect of the foregoing is to deprive the DOCS of a further hearing for which it prepared in the hope of final vindication, the doctrine applied here is one that serves broad and important public purposes. As stated by the Supreme Court in *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1947)

The general rule of *res judicata* applies to repetitious suits involving the same cause of action. It rests upon considerations of economy of judicial time and public policy favoring the establishment of certainty in legal relations.

and in *Allen v. McCurry,* 449 U.S. at 95–96, 101 S.Ct. at 415–16

Thus, res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system.

### Conclusion

The issues presented here are identical to those decided by the New York State courts in *Lewis v. Commissioner of DOCS* and *Overton v. Coughlin.* Defendants had full and fair opportunity to litigate these issues in those actions. They are precluded by the doctrine of collateral estoppel from relitigating those issues here.

Accordingly, plaintiffs' motion for preliminary relief is granted as a matter of law. Defendants are enjoined from requiring plaintiffs to have their hair cut for identification photographs while in defendants' custody and from placing plaintiffs in involuntary protective custody for refusing to have their hair cut for that purpose.