Gregory BOOMER, Plaintiff,

v.

Frank IRVIN, Superintendent of Wende Correctional Facility, Lt. R. Cooks and M. Bach, Defendants.

No. 94–CV–764H.

United States District Court, W.D. New York.

Nov. 20, 1995.

Gregory Boomer, Attica, New York, Pro Se.

Dennis C. Vacco, Attorney General of the State of New York, (William D. Lonergan, Assistant Attorney General, of counsel), Buffalo, NY, for Defendants Irvin and Bach.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment, in accordance with 28 U.S.C.

**123**

§ 636(c). Defendants Irvin and Bach have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure (Item 22). Plaintiff has also moved for summary judgment (Item 31). For the reasons that follow, both motions are denied.

## BACKGROUND

On September 30, 1994, plaintiff was an inmate at the Wende Correctional Facility, which is maintained by the New York State Department of Corrections ("DOCS"). He was confined to the B–Block housing unit. He was scheduled for a "callout"[1] on that day for an appointment with a clinician from the facility's Mental Health Unit (*see* Mental Health Unit memo, attached to Item 26). At approximately 1:30 p.m. on September 30, 1994, Corrections Officer Marc Bach advised plaintiff that he was scheduled for a mental health unit callout. Plaintiff told Bach that it was time for Friday "Jummah"[2] services. Bach then ordered plaintiff to return to his cell and "lock in" (Item 20, Ex. 1). The chronological log entries for September 30, 1994 indicate that at 1:35 p.m. plaintiff refused mental health callout (*id.*, Ex. 5). At 1:42 p.m. eight inmates (not including plaintiff) were called out for Muslim services, and at 3:14 p.m. they were returned to their cells (*id.*).

Officer Bach filed an inmate misbehavior report charging plaintiff with a violation of Rule 109.12 of the Institutional Rules of Conduct.[3] The misbehavior report, dated September 30, 1994, described the incident as follows:

[Plaintiff] was ordered to attend a mandatory mental health call-out. [He] refused to attend this call-out. I ordered [him] to return to his cell and lock in. [He] re-

---

**1.** "Callout" is defined as "[a] term used in Corrections which means a schedule of inmates to be 'called out' from their housing areas and sent to the appropriate staff member (i.e. Correction Counselor, Parole Officer, Doctor) or area as necessary." Wende Correctional Facility Policy and Procedure No. 4008 (8/1/94) (Item 20, Ex. 4).

**2.** Jummah, or "Jumu'ah," is a weekly Muslim congregational service commanded by the Koran to be held "every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer."

*O'Lone v. Estate of Shabazz,* 482 U.S. 342, 345, 107 S.Ct. 2400, 2402, 96 L.Ed.2d 282 (1987); *see also Matiyn v. Commissioner Department of Corrections,* 726 F.Supp. 42, 44 n. 3 (W.D.N.Y.1989).

**3.** Rule 109.12 provides:

Inmates shall follow all facility regulations and staff directions relating to movement within the facility. This includes, but is not limited to, seating, lock-in, lock-out, call slip procedures, and all activities of a similar nature. 7 N.Y.C.R.R. § 270.2(B)(10)(iii)(1994).

turned to his cell and locked in without further incident.

(Item 20, Ex. 1). The report was reviewed by Lt. R. Cooks on October 1, 1994 (Item 27), and a copy of the report was delivered to plaintiff on October 2, 1994 (Item 20, Ex. 1).

At plaintiff's Tier II disciplinary hearing on October 6, 1994, hearing officer Lt. Ireland dismissed the charge against plaintiff upon being advised by the Mental Health Unit that their callouts are not mandatory (*id.*).

On October 24, 1994, plaintiff filed this action for damages under 42 U.S.C. § 1983. He claims that he was deprived of his right to attend Jummah services on September 30, 1994, in violation of the first amendment. The original complaint named Frank Irvin, Superintendent of Wende, as the only defendant. On April 24, 1995, this court recommended that the district court deny defendant Irvin's motion to dismiss the complaint, and granted plaintiff leave to amend his complaint to add Lt. Cooks and Officer Bach as defendants (Item 15). On May 17, 1995, Judge Skretny accepted this court's report and recommendation in its entirety (Item 18).

Defendants now move for summary judgment. In response to defendants' motion, plaintiff filed his own motion for summary judgment. For the reasons that follow, the motions are denied.

## DISCUSSION

### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991), and must

give extra latitude to a *pro se* plaintiff. *McDonald v. Doe*, 650 F.Supp. 858, 861 (S.D.N.Y.1986).

A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248, 106 S.Ct. at 2510; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, or on the basis of conjecture or surmise. *Bryant v. Maffucci*, *supra* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)).

### II. Plaintiff's Free Exercise Claim.

■ It is not disputed that a prison inmate's first amendment right to the free exercise of religious beliefs encompasses the right to attend Jummah, which is the central congregate service of the Muslim faith. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 360, 107 S.Ct. 2400, 2403, 2410, 96 L.Ed.2d 282 (1987); *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.1989). However, the right to attend religious services in prison is not absolute. It is subject to limitations "aris[ing] both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone*, *supra* 482 U.S. at 348, 107 S.Ct. at 2403.

Until recently, the standard for assessing whether the conduct of prison officials impermissibly infringed on an inmate's free exercise of religion was "one of reasonableness, taking into account whether the particular regulation affecting some constitutional right asserted by a prisoner is 'reasonably related to legitimate penological interests.'" *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.

1990) (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)); *see also Matiyn v. Henderson*, 841 F.2d 31, 37 (2d Cir.), *cert. denied*, 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988). However, in November, 1993, Congress enacted the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, which established a "compelling interest" standard as "a workable test for striking sensible balances between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(5). RFRA provides:

**(a) In general**

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

**(b) Exception**

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in the furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

**(c) Judicial relief**

A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb–1. The Act became effective November 16, 1993. 42 U.S.C. § 2000bb–3(a); *Woods v. Evatt*, 876 F.Supp. 756, 761 (D.S.C.1995).

In *Jolly v. Coughlin*, 894 F.Supp. 734 (S.D.N.Y. August 14, 1995), the court examined the legislative history of RFRA in order to determine the correct standard to apply to free exercise claims arising in the prison context. According to the court:

Both the House and the Senate Reports explain that the compelling state interest test applies to free exercise claims by prison inmates. The legislative history also indicates that RFRA was intended to restore the "traditional" compelling state interest test in the prison context that was "weakened" by *O'Lone*. However, the Senate Report also explains that while RFRA establishes one test for all claims of government infringement on religious practices, "[t]his single test ... should be interpreted with regard to the relevant circumstances in each case." Accordingly, "the committee expects that the courts will continue the tradition of giving due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." However, "the state must do more than simply offer conclusory statements that a limitation on religious freedom is required for security, health o[r] safety" to establish that its interests are of the "highest order."

894 F.Supp. at 742.

■ In this § 1983 case, plaintiff has not sued under RFRA, nor have defendants addressed its applicability. Instead, defendants move for summary judgment on the ground that the prison regulations, policies and official conduct at issue are all reasonably related to the legitimate penological interest of maintaining order and security. In light of the legislative history of RFRA as explained in *Jolly v. Coughlin*, this mere articulation of a reasonable relationship between Officer Bach's implementation of the prison's "callout" procedures and the penological interests served does not provide sufficient grounds for summary judgment dismissing plaintiff's first amendment claim as a matter of law. *See also Werner v. McCotter*, 49 F.3d 1476, 1479 (10th Cir.1995) (RFRA applies to all freedom of religion cases; defendant cannot merely rely on "reasonable relationship" standard).

■ By the same token, plaintiff has not made the threshold showing required by RFRA that his "religious exercise has been substantially burdened" by the policies and

conduct complained of. *Jolly v. Coughlin, supra,* 894 F.Supp. at 741.

### III. *Sandin v. Conner.*

Defendants also argue that plaintiff's claim is insufficient under *Sandin v. Conner,* 515 U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), which held that a Hawaii state inmate's 30–day disciplinary segregation "did not present the type of atypical, significant deprivation" necessary to invoke the procedural protections of the due process clause. —— U.S. at ——, 115 S.Ct. at 2301, 132 L.Ed.2d at 431. In doing so, the Court rejected the methodology employed in cases such as *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), for determining whether a particular prison regulation creates a protected liberty interest. —— U.S. at —— – ——, 115 S.Ct. at 2297–2300, 132 L.Ed.2d at 426–430. The Court was careful to note that its due process analysis did not affect prisoners' rights to invoke the protection from arbitrary state action provided by the first and eighth amendments, the equal protection clause of the fourteenth amendment, and internal prison grievance procedures and state judicial review. —— U.S. at —— n. 11, 115 S.Ct. at 2302 n. 11, 132 L.Ed.2d at 432 n. 11.

Because plaintiff's complaint in this case invokes the protection of the first amendment and not the due process clause, defendants' reliance on *Sandin v. Conner* is misplaced.

### IV. Qualified Immunity.

■ Finally, defendants move for summary judgment on qualified immunity grounds. State officials performing discretionary functions in the course of their duties are immune from suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (quoted in *Russell v. Coughlin,* 910 F.2d 75, 78 (2d Cir.1990)). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987); *Russell, supra,* 910 F.2d at 78; *Gittens v. LeFevre, supra,* 891 F.2d at 42. "The objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

■ Thus, a defendant is entitled to summary judgment on qualified immunity grounds when, "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ]," *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986), *quoted in Robison, supra,* 821 F.2d at 921, the court determines that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon,* at 420. "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Id.*

■ Based on this court's review of the record under these standards, I find that a reasonable jury could conclude that it was objectively unreasonable for Officer Bach to refuse plaintiff's request to attend Jummah services. Plaintiff's right to attend these services is clearly established. The mental health callout was not mandatory, and therefore there was no reason to deny plaintiff's request. This record clearly raises factual issues for a jury to consider and resolve.

### CONCLUSION

Based on the foregoing, defendants motion for summary judgment (**Item 22**) is denied. Plaintiff's motion for summary judgment (**Item 31**) is also denied. A schedule governing discovery will be set by separate order.

**SO ORDERED.**