**Alfredo RAMIREZ, Plaintiff,**

v.

**Thomas A. COUGHLIN, III, Earl B. Moore, Dr. Reverend, Defendants.**

No. 94–CV–704.

United States District Court, N.D. New York.

March 28, 1996.

Alfredo Ramirez, Wallkill Correctional Facility, Wallkill, New York, Pro Se.

Dennis C. Vacco, Attorney General, State of New York, Department of Law, Albany, New York (David Fruchter, Assistant Attorney General, of counsel), for Defendants.

## *ORDER*

CHOLAKIS, District Judge.

This matter comes before the Court on the Report–Recommendation of United States Magistrate Judge Ralph W. Smith, Jr., dated February 2, 1996. Magistrate Judge Smith recommends that this Court deny both plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment. The parties have been served with the Magistrate Judge's Report–Recommendation and defendants have filed objections.

After careful review of the entire file, including the Magistrate Judge's Report–Rec-

ommendation and defendants' objections, this Court accepts and adopts the Report–Recommendation in full for the reasons stated therein. As a result, plaintiff's motion for summary judgment is hereby DENIED and defendants' cross-motion for summary judgment is also DENIED [1].

IT IS SO ORDERED.

### REPORT–RECOMMENDATION

RALPH W. SMITH, Jr., United States Magistrate Judge.

This *pro se* civil rights action, brought pursuant to 42 U.S.C. § 1983, was referred to the undersigned for report and recommendation by the Honorable Con. G. Cholakis by Standing Order dated August 2, 1985. Presently before the court are plaintiff's motion for summary judgment and defendants' cross-motion for summary judgment.

*Parties*

Plaintiff in this action is an inmate in the custody of the New York State Department of Correctional Services (hereinafter "DOCS"), defendant Coughlin is the former Commissioner of DOCS, and defendant Moore is the Assistant Commissioner for Ministerial and Family Services of DOCS.

*Facts*

In his complaint, plaintiff, who describes himself as a Satanist and a member of the Church of Satan, claims that he has been denied the right to freely exercise his religious beliefs while in prison.[1] In addition, plaintiff claims that defendants refuse to recognize Satanism as a *bona fide* religion, and refuse to allow him to possess various items, such as a three inch metal bell, which are required to perform rituals central to his religion.

As plaintiff is appearing in this action *pro se*, it is somewhat difficult to decipher his claims. However, various documents which

plaintiff has submitted in support of his motion for summary judgment, and in opposition to defendants' cross-motion for summary judgment, indicate that the complaint is based in large part on the following events:

(1) On June 12, 1991, the Central Office Review Committee of DOCS (hereinafter "CORC"), issued an opinion with regard to Grievance No. SS–14059–91 (this opinion is hereinafter referred to as "Grievance # SS–14059–91"). Grievance # SS–14059–91 provides, in pertinent part:

Further, CORC has been advised by the Division of Ministerial Services that any paraphernalia openly depicting Satanism would be considered to be a threat to the safety, security and good order of the facility, since it could provoke a violent confrontation between inmates.[2]

(2) On December 21, 1991, defendant Coughlin wrote a letter to George Wurster of Prisoners' Legal Services. This letter provides, in pertinent part:

This is in response to your letter dated November 26, 1991, regarding Mr. Alfredo Ramirez, # 89–T–3513 [sic], and his practice of satanism, specifically, his wearing of a satanic metal [sic] and the issuance of a religious certificate denoting satanism as his religion.

Please be advised it is the policy of this Department that any paraphernalia openly depicting satanism is to be considered a threat to the safety, security and good order of the facility, since it could provoke a violent confrontation between inmates.[3]

(3) On February 17, 1994, plaintiff filed Grievance No. GM–21145–94. In this grievance, plaintiff requested that he be permitted to possess various items which he claims are required to perform rituals central to his religion.

---

**1.** In addition, as noted in Magistrate Judge Smith's Report–Recommendation, Philip Coombe, the current Commissioner of the Department of Correctional Services, shall be substituted as a defendant herein in regard to plaintiff's official capacity claims against defendant Thomas A. Coughlin, III.

**1.** Although not clearly alleged in the complaint, plaintiff's claims appear to be brought pursuant to both the First Amendment and the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* (hereinafter "RFRA").

**2.** *See* Docket No. 21.

**3.** *See* Docket No. 40.

(4) On March 7, 1994, plaintiff filed Grievance No. ORL–7674–94. In this grievance, plaintiff requested that the above quoted portion of Grievance # SS–14059–91 be amended, and that Satanism be recognized as a *bona fide* religion.

(5) On April 13, 1994, CORC issued an opinion with regard to Grievance No. GM–21145–94 (this opinion is hereinafter referred to as "Grievance # GM–21145–94"). Grievance # GM–21145–94 provides, in pertinent part:

> CORC sustains the Superintendent, i.e.:
>
> Grievant is advised that Directive # 4202 allows no provision for Satanism to be recognized as a bona fide religion, and its symbols may be construed by staff and other inmates as inflammatory, which would be inconsistent with Departmental interests and to the good running order of the facility.
>
> In view of the aforementioned, grievant's requested action is denied.

> \*    \*    \*    \*    \*    \*

Further, CORC cites its prior disposition in SS–14059–91 dated 6/12/91 which states, in part, i.e.:

> Further, CORC has been advised by the Division of Ministerial Services that any paraphernalia openly depicting Satanism would be considered to be a threat to the safety, security and good order of the facility, since it could provoke a violent confrontation between inmates.[4]

(6) On April 20, 1994, CORC issued an opinion with regard to Grievance No. ORL–7674–94 (this opinion is hereinafter referred to as "Grievance # ORL–7674–94"). Grievance # ORL–7674–94 provides, in pertinent part:

> CORC asserts that the Director of Family and Ministerial Services does not have the authorization to amend the CORC disposition in SS–14059–91. Further, the grievant has not provided sufficient information to warrant further review of SS–14059–91. CORC was advised that the grievant's designated religion has been changed in the department records to Satanism as requested by the grievant. However, CORC was informed that the grievant's request for recognition of a religious body or church is improper.[5]

The complaint, which is brought against defendants in both their individual and official capacities, seeks the following relief:

(1) A judgment declaring, *inter alia:*
  (a) That Grievance # SS–14059–91 is discriminatory and should be amended;
  (b) That Satanism is a *bona fide* religion; and
  (c) That plaintiff be permitted to own and possess various items, such as a three inch metal bell, which he claims are required to perform rituals central to his religion;

(2) Injunctive relief barring defendants from discriminating against him on the basis of his religion;

(3) Compensatory damages in the amount of $666; and

(4) Punitive damages in the amount of $666.

*Discussion*

*Plaintiff's Motion for Summary Judgment*

As noted above, plaintiff is appearing in this action *pro se,* and has had a noticeable degree of difficulty in presenting and litigating his claims. As a result, it is not surprising that his motion for summary judgment is fatally deficient as a matter of law. In fact, said motion appears to be nothing more than a collection of "exhibits" that plaintiff believes support his claims. Accordingly, plaintiff's motion for summary judgment should be denied.

*Defendants' Cross–Motion for Summary Judgment*

In their cross-motion for summary judgment, defendants claim, *inter alia:* (1) that plaintiff's claim regarding Grievance # SS–14059–91 is moot, (2) that plaintiff is not entitled to have DOCS grant recognition to Satanism as a *bona fide* religion, (3) that

**4.** *See* Docket No. 40.

**5.** *See* Docket No. 21.

plaintiff is not entitled to possess a three inch metal bell, (4) that plaintiff has not alleged an injury which would entitle him to any relief, (5) that plaintiff's claims are barred by the doctrine of qualified immunity, and (6) that the complaint should be dismissed as against defendant Coughlin on the ground that plaintiff has failed to allege that defendant Coughlin was personally involved in any of the events underlying this action. For the reasons set forth below, the court is of the opinion that each of defendants' claims is without merit.

### The Grievance # SS–14059–91 Claim

■ As noted above, plaintiff seeks, *inter alia*, a declaration that Grievance # SS–14059–91 is discriminatory and should be amended. The portion of Grievance # SS–14059–91 to which plaintiff objects states:

> Further, CORC has been advised by the Division of Ministerial Services that any paraphernalia openly depicting Satanism would be considered to be a threat to the safety, security and good order of the facility, since it could provoke a violent confrontation between inmates.

Defendants claim that this portion of Grievance # SS–14059–91 is no longer an accurate statement of DOCS' policy with regard to Satanism. According to defendants, the DOCS policy reflected in the above quoted passage changed as a result of Congress' enactment of RFRA. As a result, defendants argue that plaintiff's claim with regard to Grievance # SS–14059–91 is moot.

Unfortunately for defendants, Grievance # GM–21145–94, *which was issued subsequent to the enactment of RFRA,* provides, in pertinent part:

> Further, CORC cites its prior disposition in SS–14059–91 dated 6/12/91 which states, in part, i.e.:
>
>> Further, CORC has been advised by the Division of Ministerial Services that any paraphernalia openly depicting Satanism would be considered to be a threat to the safety, security and good order of the

facility, since it could provoke a violent confrontation between inmates.

Thus, contrary to defendants' assertions, it appears that DOCS' policy with regard to Satanism remains unchanged by RFRA.[6] At a minimum, genuine issues of material fact exist precluding summary judgment on this issue.

### The Recognition of Satanism Claim

■ Defendants also claim that plaintiff is not entitled to have DOCS grant recognition to Satanism as a *bona fide* religion. However, this court has found numerous cases in which exactly this type of relief has been sought and granted in the prison context. *See, e.g., Wilson v. Schillinger,* 761 F.2d 921, 930 (3d Cir.1985), *cert. denied,* 475 U.S. 1096, 106 S.Ct. 1494, 89 L.Ed.2d 895 (1986); *Benjamin v. Coughlin,* 643 F.Supp. 351, 352 (S.D.N.Y.1986); *Bryant v. McGinnis,* 463 F.Supp. 373, 387–88 (W.D.N.Y.1978). *See generally O'Lone v. Estate of Shabazz,* 482 U.S. 342, 363 n. 5, 107 S.Ct. 2400, 2412 n. 5, 96 L.Ed.2d 282 (1987) (Brennan, J., dissenting) and cases cited therein.

In addition, although defendants claim that DOCS does not confer "recognition" upon religions, the court has found numerous cases in which DOCS personnel have apparently denied inmates access to requested religious items and/or services on the ground that their religion was not "recognized" by DOCS. *See, e.g., Patrick v. LeFevre,* 745 F.2d 153, 155 (2d Cir.1984) (Five Percenter Nation of Islam ("Five Percenters") not recognized as a religion); *Muhammad v. City of New York Dep't of Corrections,* 904 F.Supp. 161, 182 (S.D.N.Y.1995) (Latin Kings not recognized as a religion); *Burnell v. Mann,* 1994 WL 719222, *3 (N.D.N.Y.) (Five Percenters not recognized as a religion); *Benjamin,* 643 F.Supp. at 352 (Rastafarianism not recognized as a religion); *Bryant,* 463 F.Supp. at 387 (Muslimism not recognized as a religion). Thus, the failure of DOCS to "recognize" less traditional religions appears to have a dramatic impact on the adherents' ability to exercise their religious beliefs without inter-

---

**6.** It is noteworthy that defendants did not include or refer to Grievance # GM–21145–94 in their motion papers.

ference and/or harassment from DOCS personnel. Accordingly, defendants are not entitled to summary judgment on this issue.

### The Three Inch Metal Bell Claim

■ As noted above, plaintiff claims that he requires a three inch metal bell to perform rituals central to his religion. Defendants, on the other hand, assert that plaintiff is not entitled to possess such a bell. In support of their position, defendants argue that, since the bell requested by plaintiff is made of metal, it could be fashioned into a weapon. Thus, according to defendants, it is proper for DOCS to deny plaintiff the use of such a bell for "security reasons."

Under RFRA, DOCS may only substantially burden plaintiff's right to exercise his religion if the burden to plaintiff (a) furthers a compelling governmental interest, and (b) is the least restrictive means of furthering said interest. *See* 42 U.S.C. § 2000bb–1. Defendants claim that they have satisfied this standard. The court disagrees.

■ Prison safety and security are certainly compelling governmental interests. "However, defendants cannot merely brandish the words 'security' and 'safety' and expect that their actions will automatically be deemed constitutionally permissible conduct." *Campos v. Coughlin,* 854 F.Supp. 194, 207 (S.D.N.Y.1994).

Although not clear from the record in this case, it appears that the rituals which plaintiff seeks to perform do not require inordinate amounts of time. *See Howard v. United States,* 864 F.Supp. 1019, 1022 (D.Colo. 1994) (inmate seeking relief strikingly similar to that sought by plaintiff testified that he needed to perform a ritual about once a month, which would take about an hour). In addition, there appears to be no reason why DOCS personnel could not, with a minimum of effort, keep a three inch metal bell in a secure place for the vast majority of time that it is not being used by plaintiff for ceremonial purposes.

At a minimum, genuine issues of material fact exist as to whether denying plaintiff the use of such a bell for "security reasons" is the least restrictive means of furthering the government's interests in prison safety and security. Thus, summary judgment is inappropriate with regard to this issue.

### Sufficiency of Plaintiff's Allegations

■ Defendants further claim that "plaintiff has not alleged any violation of his rights or any injury such as would entitle him to any relief." *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Cross–Motion for Summary Judgment, at 8. This claim is so lacking in merit as to require little discussion.

It is generally recognized that violations of First Amendment rights constitute an *irreparable* injury. *See, e.g., Campos,* 854 F.Supp. at 204; *Howard,* 864 F.Supp. at 1028. Since plaintiff has clearly alleged violations of his First Amendment rights, he has certainly stated a claim which, if proven, would entitle him to relief.

### Qualified Immunity

■ Defendants argue that, even if plaintiff's allegations state a claim upon which relief can be granted, any such claim is barred by the doctrine of qualified immunity. This argument is meritless. Qualified immunity "shields state officials from liability where they did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wright v. Smith,* 21 F.3d 496, 500 (2d Cir.1994) (quotation omitted).

However, even assuming, *arguendo,* that defendants have satisfied this standard, it is well settled that qualified immunity does not bar either declaratory or injunctive relief, which constitute the primary relief sought by plaintiff. *See Allen v. Coughlin,* 64 F.3d 77, 81 (2d Cir.1995). "Even if established, therefore, qualified immunity is not grounds for dismissing all of [plaintiff's] claims." *Id.*

### Personal Involvement

■ "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright,* 21 F.3d at 501 (quotation omitted).

A defendant may be personally involved in a constitutional deprivation within the

meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted). *See also Wright,* 21 F.3d at 501.

Defendants claim that the complaint should be dismissed as against defendant Coughlin on the ground that plaintiff has failed to allege that defendant Coughlin was personally involved in any of the events underlying this action. However, the doctrine of personal involvement, like the doctrine of qualified immunity, does not bar either declaratory or injunctive relief, which constitute t e primary relief sought by plaintiff. *See Wright,* 21 F.3d at 501; *Tarafa v. Manigo,* 897 F.Supp. 172, 173 n. 4 (S.D.N.Y.1995).

█ In any event, defendant Coughlin's letter to George Wurster of Prisoners' Legal Services constitutes sufficient evidence of his involvement in the events underlying this action to survive defendants' cross-motion for summary judgment.

### Official Capacity Claims

█ As noted above, plaintiff's complaint is brought against defendants in both their individual and official capacities. It is well settled that an official capacity claim can be brought against state officials for prospective, non-monetary relief (*i.e.,* the primary relief sought by plaintiff), *see, e.g., New York City Health & Hosps. Corp. v. Perales,* 50 F.3d 129, 134–35 (2d Cir.1995); *Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir.1990), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991), and that personal defenses such as qualified immunity do not apply to state officials sued in their official capacities. *See, e.g., Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991); *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985).

In the instant case, defendants' cross-motion for summary judgment fails to address plaintiff's claims against them in their official capacities. Accordingly, these claims should also survive defendants' motion.[7] *See Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993).

### Conclusion

In sum, the record before the court raises serious concerns that defendants' refusal to recognize Satanism as a *bona fide* religion, and their denial of plaintiff's requests to possess various items required to perform rituals central to his religion, are "based on the content of plaintiff's beliefs—an unacceptable criteria [sic] according to the Supreme Court." *Howard,* 864 F.Supp. at 1030. As such, the court declines defendants' invitation to gloss over the important First Amendment issues raised by this case. Simply stated, " '[w]e ought to give the Devil his due.' " *Id.* (quoting *Childs v. Duckworth,* 705 F.2d 915, 924 (7th Cir.1983) (Cudahy, J., dissenting)).

For the reasons stated above, it is hereby

**RECOMMENDED,** that plaintiff's motion for summary judgment be denied; and it is further

**RECOMMENDED,** that defendants' cross-motion for summary judgment also be denied.

**IT IS HEREBY ORDERED** that the Clerk of the Court serve a copy of this Report–Recommendation, by regular mail, upon the parties to this action.

---

**7.** Should the district court choose to accept this portion of the court's Report–Recommendation, Philip Coombe, the current Commissioner of DOCS, should be substituted as a defendant herein with regard to plaintiff's official capacity claims against defendant Coughlin. *See* Fed. R.Civ.P. 25(d)(1); *Hafer,* 502 U.S. at 25, 112 S.Ct. at 361; *Graham,* 473 U.S. at 166 n. 11, 105 S.Ct. at 3105 n. 11.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TWENTY (20) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

DATED: February 2, 1996
Albany, New York