**Darlena HARRIS, Plaintiff,**

v.

**Elaine A. LORD, Superintendent of Bedford Hills Correctional Facility; Sgt. Wilkins, Mental Health Department and C.O. Burnelle, Defendants.**

**No. 95 Civ. 9073.**

United States District Court, S.D. New York.

March 7, 1997.

gious services. Upon leaving the yard on that day, plaintiff was approached by defendant Burnelle, who questioned her about her destination and then told her to return to the yard. When plaintiff asked defendant Burnelle why she could not attend her religious services, Burnelle responded with obscenities and again ordered her back to the yard. For reasons that are unclear, Plaintiff did not return to the yard but instead returned to her housing unit and Burnelle returned to his assigned post. Plaintiff did not attend her religious services.

Upon returning to the housing unit, plaintiff requested to be seen by someone in the mental health department at the Facility because she "was unstable" after her exchange with defendant Burnelle and needed to "calm down." The plaintiff expressed to defendant Wilkins, the officer on duty, that she was "in fear of her life" because she thought that defendant Burnelle would try to beat her when he came to return her identification card that he had taken while questioning plaintiff. Defendant Wilkins refused her visit to the mental health unit allegedly because he "said so." Plaintiff then requested three times, on each of the subsequent three days, to be seen by someone in the mental health department. Although plaintiff was told that the mental health department had been notified of plaintiff's request, plaintiff was not seen by someone in the mental health department until "sometime in September." Plaintiff alleges violations of her first, eighth and fourteenth amendment rights.

Darlena Harris, Bedford Hills, NY, pro se.

Marion Buchbinder, Dennis C. Vacco, Atty. Gen. of State of N.Y., New York City, for defendants.

*Opinion and Order*

BAER, District Judge:

Plaintiff prisoner *pro se* sues defendants pursuant to 42 U.S.C. § 1983 for alleged violations of her civil rights. Defendants move to dismiss plaintiff's cause of action. For the reasons stated below, defendants motion to dismiss plaintiff's first amendment claim is denied while defendants' motion to dismiss plaintiff's fourteenth amendment and eighth amendment claims is granted.

### I. *Background*

On August 9, 1995, Plaintiff, who is Muslim, was incarcerated at Bedford Hills Correctional Facility (the "Facility") and as such was permitted to leave the recreation yard of the Facility in order to attend weekly reli-

### II. *Discussion*

Defendants move to dismiss plaintiff's claims on several grounds: (1) her claims for damages for mental and emotional distress are barred pursuant to § 1997e(e) of the Prison Litigation Reform Act ("PLRA"); (2) denial of access to a congregate religious service on one occasion does not rise to the level of a constitutional violation; (3) plaintiff's claim of harassment fails to state a cause of action under § 1983; (4) denial of access to a mental health facility on one occasion does not rise to the level of a constitutional violation and (5) defendants are protected by qualified immunity.

### A. Retroactivity of the PLRA

Defendants argue that plaintiff's claims must be dismissed because she sues for mental distress without any showing of physical injury as is required under § 1997e(e) of the PLRA. The defendants argue that although the PLRA became effective after the date of the incident alleged here, this section of the PLRA should apply retroactively, and thus bar plaintiff's claim.

■ Section 1997e(e) of the PLRA states in relevant part that:

> no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e) (Supp.1997). Because the PLRA does not state its effective date, the Second Circuit has used the standards set forth by the Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), to determine whether or not particular sections of the PLRA apply retroactively. *Covino v. Reopel*, 89 F.3d 105 (2d Cir.1996). The core inquiry is "whether the new provision attaches new legal consequences to events completed before [the PLRA's] enactment." *Landgraf*, 511 U.S. at 270, 114 S.Ct. at 1499. If it does, the provision may not be applied retroactively. *Cooper v. Casey*, 97 F.3d 914, 921 (7th Cir.1996).

While the Second Circuit has not addressed whether or not § 1997e(e) of the PLRA applies retroactively, the Second Circuit has held that the PLRA's fee application provision applies retroactively. *Covino*, 89 F.3d at 107. In *Covino*, the Court found that the fee application provision of the PLRA does not attach new legal consequences to events before the its enactment because the prisoner can still proceed with his claims provided he satisfies the fee requirement. *Id.* In its decision, the Court also noted that "statutes effecting changes in substantive law will normally be considered not to have retroactive effect," *id.*, and, since the fee provision is procedural in nature, it may be applied retroactively. *Id.* ·

■ Section 1997e(e), however, does attach new legal consequences to the events completed before the enactment of the PLRA because it denies plaintiff a cause of action where she once had "a legally cognizable claim." *Ramirez v. County of San Francisco*, 1997 WL 33013 at *8 (N.D.Ca. Jan.23, 1997). Unlike the provision at issue in *Covino*, the provision here is neither procedural nor will plaintiff be allowed to continue with her cause of action if it were applied retroactively; rather her cause of action would be barred. Therefore, because this section "would impair rights [plaintiff] possessed when [she] acted," *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505, this section of the PLRA does not apply retroactively, and consequently plaintiff's claims will not be dismissed on this ground. *But see Brazeau v. Travis*, 1996 WL 391701 (N.D.N.Y. July 9, 1996).

### B. Plaintiff's First Amendment Free Exercise Claim

Plaintiff claims that her first amendment free exercise rights were violated when defendant Burnelle refused to allow her to attend her weekly religious services. Defendants argue that preventing a prisoner from attending congregate religious services once does not rise to the level of a constitutional violation and therefore plaintiff's claim must be dismissed.

■ Defendants do not dispute that a prisoner's first amendment right to free exercise of religion includes the right to attend weekly religious services. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). However, as defendants correctly point out, this right is not unlimited or absolute, but rather is subject to limitations that arise both as a consequence of being incarcerated and from "valid penological objectives." *Id.* The standard to determine if prison officials' conduct violate prisoners' constitutional rights is "one of reasonableness, taking into account whether the particular [act] affecting some constitutional right asserted by a prisoner is 'reasonably related' to legitimate penological interests." *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990) (quoting *Turner v.*

*Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)).

■ Under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb *et seq.* (1993), however, the standard used to determine if a prison official's conduct violates a prisoner's free exercise rights is a "compelling interest" standard. That is, prison officials must show that their actions in denying the plaintiff her right to attend weekly services further a compelling governmental interest and are the least restrictive means available of effectuating that interest. *Jolly v. Coughlin,* 76 F.3d 468, 475 (2d Cir. 1996). In this circuit, the courts will analyze a plaintiff's first amendment claim and RFRA claim "separately according to their respective standards." *Show v. Patterson,* 955 F.Supp. 182, 189 (S.D.N.Y.1997).[1]

■ Defendants' argument, however, fails under both the higher RFRA standard and the traditional first amendment standard. Defendants assert no reason, compelling or otherwise, as to why plaintiff was denied access to attend her religious services. Defendants instead argue that denying plaintiff access to religious services once does not amount to a constitutional violation. However, in each case that the defendants cite for this proposition, the prison officials in those cases asserted some reason for the denial of access to religious services. *See e.g., Matiyn v. Henderson,* 841 F.2d 31 (2d Cir.1988) (transferring a prisoner to a facility where he could not attend congregate religious services did not violate the first amendment because it was done for a valid penological reason). It is impossible to determine whether or not defendants' actions further a compelling governmental interest under RFRA or are reasonably related to a legitimate penological interest under the traditional first amendment standard but clearly none is advanced by the defendants. Therefore, defendants' motion to dismiss plaintiff's first amendment claim is denied.

### C. Plaintiff's Harassment Claim

Plaintiff claims she suffered injury as a result defendant Burnelle's "abusive behavior." Defendants argue that threats or verbal abuse do not rise to the level of a constitutional violation and therefore this claim must be dismissed.

■ The law is clear that "although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983." *Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995). *See also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986). Furthermore, verbal threats do not violate the fourteenth amendment "unless accompanied by physical force or the present ability to effectuate the threat." *Jermosen,* 878 F.Supp. at 449.

Here plaintiff does not allege, nor is there a showing of, physical force by defendants. Consequently, defendants' motion to dismiss plaintiff's fourteenth amendment claim based on harassment is granted.

### D. Denial of Medical Treatment

Plaintiff alleges that defendants violated her eight amendment right against cruel and unusual punishment when they denied her access to the mental health department after she requested the same. Defendants argue that plaintiff has not spelled out in her pleading the two pronged test of serious medical need and deliberate indifference, and therefore the claim must be dismissed.

To establish a denial of medical care claim violative of the eighth amendment, a prisoner must prove that the defendants acted with "deliberate indifference to [his] serious medical needs." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976)). The alleged deprivation must be, in objective terms, "sufficiently serious." *Id.* This standard contemplates "a condition of urgency, one that may produce death, degeneration or extreme pain." *Id.*

---

**1.** Here, plaintiff's complaint alleges a first amendment claim but does not refer to RFRA. Reading plaintiff's complaint liberally as I must, I conclude that plaintiff brings her claims pursuant to RFRA and the first amendment. *Ramirez v. Coughlin,* 919 F.Supp. 617, 619 (N.D.N.Y. 1996).

(citing *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). Furthermore, plaintiff must allege that the charged official acted with the culpable state of mind of deliberate indifference, i.e. " 'intentional efforts ... to delay [plaintiff's] access to medical care at a time when [ ]he was in extreme pain[,]' and has made his medical problems known 'to the attendant prison personnel[,]' of 'complete denial' of medical treatment, or of a 'reckless or callous indifference to the ... safety of ... prisoners.' " *Harding v. Kuhlmann*, 588 F.Supp. 1315, 1316 (S.D.N.Y.1984) (alterations in original) (footnotes and citations omitted), *aff'd* 762 F.2d 990 (2d Cir.1985).

■ Here, plaintiff fails to establish that her medical needs are sufficiently serious to rise to the level of a constitutional violation. She alleges that following the incident with defendant Burnelle, she was "unstable," in fear and in need of someone to talk to in order to "calm down." She fails to allege any showing of "pain, discomfort or risk to health," *Farinaro v. Coughlin*, 642 F.Supp. 276, 279 (S.D.N.Y.1986), nor does she support her claim with "medical evidence, such as a physician's diagnosis." *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995). Sadly, plaintiff's bare assertions fail to evidence the urgency required under the caselaw to meet the "serious medical need" requirement.[2] *Compare Hathaway v. Coughlin*, 37 F.3d 63, 67 (degenerative hip disease is serious medical need); *Sims v. Daley*, 1997 WL 33608 (S.D.N.Y. Jan.29, 1997) (hearing voices to commit suicide with history of mental illness is serious medical need), *with Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (addiction that incites feelings of fear is not serious medical need); *Flowers v. Dalsheim*, 826 F.Supp. 772, 775–76 (S.D.N.Y. 1993) (fear of insulin shock that causes emotion distress is not serious medical need). Consequently, defendants' motion to dismiss plaintiff's eighth amendment claim is granted.

**2.** It is important to note that following defendants' motion to dismiss, plaintiff failed to respond adequately and after a pre-trial conference held in chambers and on the record I permitted plaintiff to submit further papers in opposition to defendants' motion and elaborating on her claim. Plaintiff received a transcript of that pre-trial conference and submitted an expanded response.

## E.  Qualified Immunity

Defendants argue that even if their actions rise to the level of a constitutional violation, they are protected from liability by qualified immunity because their actions did not contravene clearly established law. Plaintiff did not respond to this aspect of defendant's motion to dismiss.

■ The doctrine of qualified immunity provides that state officials performing discretionary functions will not be liable for suits alleging constitutional violations "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Boomer v. Irvin*, 919 F.Supp. 122, 126 (W.D.N.Y.1995). Even where such constitutional rights are clearly established, qualified immunity will protect a government official if it was objectively reasonable for him to believe his acts did not violate those rights. *Id.* (citation omitted).

■ Defendants' argument that it was not clear in 1995 that denying plaintiff access to congregate religious services on one occasion violated plaintiff's constitutional rights is unpersuasive. Even prior to RFRA's enactment (and with it the "compelling interest" standard), the law was clear that prisoners had the right to attend congregate religious services unless prison officials could articulate a justification to prevent them from so doing that was reasonably related to some valid penological objective. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353, 107 S.Ct. 2400, 2406–07, 96 L.Ed.2d 282 (1987). Here defendants have provided no reason. Moreover, I find that a "reasonable jury could conclude that it was objectively unreasonable for [defendants] to refuse plaintiff's request to attend religious services." *Boomer*, 919 F.Supp. at 126. Therefore, defendants are not entitled to qualified immunity for denying plaintiff access to her weekly religious services.

## III. *Conclusion*

For the reasons stated above, defendants' motion to dismiss plaintiff's first amendment claim is DENIED while defendants' motion to dismiss plaintiff's fourteenth amendment and eighth amendment claims is GRANTED.

**SO ORDERED.**