**Gregory BOOMER, Plaintiff,**

v.

**Frank IRVIN, Superintendent of Wende Correctional Facility, Lt. R. Cooks and M. Bach, Defendants.**

**No. 94–CV–764H.**

United States District Court, W.D. New York.

April 7, 1997.

Gregory Boomer, pro se.

William Lonergan, Buffalo, NY, for defendant.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment, in accordance with 28 U.S.C. § 636(c). Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (Item 37). For the following reasons, defendants motion is granted.

## *BACKGROUND*

The factual and procedural background of this case has previously been set forth in this court's Report and Recommendation dated April 4, 1995 (Item 15, adopted May 17, 1995 (Item 18)), and Decision and Order dated November 20, 1995. *Boomer v. Irvin,* 919 F.Supp. 122 (W.D.N.Y.1995). It will be restated here only as necessary to the determination of defendants' motion.

On September 30, 1994, plaintiff was an inmate at the Wende Correctional Facility maintained by the New York State Department of Corrections ("NYSDOCS"). At approximately 1:30 p.m. on that day, Corrections Officer Marc Bach advised plaintiff that he was scheduled for a Mental Health Unit callout (see Mental Health Unit memo, attached to Item 26). Plaintiff told Bach that it was time for Friday "Jummah"[1] services.

1. As noted in this court's previous decision and order, Jummah, or "Jumu'ah," is a weekly Mus-

Bach then ordered plaintiff to return to his cell and "lock in" (Item 20, Ex. 1).

On September 30, 1994, Bach filed an inmate misbehavior report charging plaintiff with a violation of Rule 109.12 of the Institutional Rules of Conduct.[2] The misbehavior report described the incident as follows:

> [Plaintiff] was ordered to attend a mandatory mental health call-out. [He] refused to attend this call-out. I ordered [him] to return to his cell and lock in. [He] returned to his cell and locked in without further incident.

(Item 20, Ex. 1). At plaintiff's Tier II disciplinary hearing on October 6, 1994, hearing officer Lieutenant Ireland dismissed the charge against plaintiff upon being advised by the Mental Health Unit that their callouts are not mandatory (*id.*).

On October 24, 1994, plaintiff filed this action for damages under 42 U.S.C. § 1983. He claims that he was deprived of his right to attend Jummah services on September 30, 1994, in violation of the free exercise clause of the First Amendment to the United States Constitution. The original complaint named Frank Irvin, Superintendent of Wende, as the only defendant. On April 24, 1995, by leave of court, the complaint was amended to add Officer Bach and Lieutenant Cooks (the officer who reviewed Bach's misbehavior report) as defendants (*see* Item 15).

Defendants now move for summary judgment on the ground that plaintiff's keeplock confinement which caused him to miss Jummah services on September 30, 1994 did not result in a substantial burden on the exercise of his religious beliefs. For the reasons that follow, defendants' motion is granted.

### *DISCUSSION*

#### I. Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Coach Leatherware Co., Inc. v. Ann Taylor, Inc.*, 933 F.2d 162, 166–67 (2d Cir.1991), and must give extra latitude to a *pro se* plaintiff. *McDonald v. Doe*, 650 F.Supp. 858, 861 (S.D.N.Y.1986).

#### II. Plaintiff's Free Exercise Claim.

As this court noted in its previous Decision and Order in this case, until recently the standard for assessing whether the conduct of prison officials impermissibly infringed on an inmate's free exercise of religion was whether the officials' conduct was " 'reasonably related to legitimate penological interests.' " *Boomer v. Irvin, supra*, 919 F.Supp. at 124–25 (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990), and *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987)); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353, 107 S.Ct. 2400, 2407, 96 L.Ed.2d 282 (1987); *Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Matiyn v. Henderson*, 841 F.2d 31, 37 (2d Cir.), *cert. denied*, 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988). However, in November, 1993, Congress enacted the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb (effective November 16, 1993), which established a "compelling interest" standard as "a workable test for striking sensible balances

---

lim congregational service commanded by the Koran to be held "every Friday after the sun reaches its zenith and before the Asr, or afternoon prayer." *Boomer v. Irvin*, 919 F.Supp. 122, 123 n. 2 (W.D.N.Y.1995) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 345, 107 S.Ct. 2400, 2402, 96 L.Ed.2d 282 (1987); *see also Matiyn v. Commissioner Department of Corrections*, 726 F.Supp. 42, 44 n. 3 (W.D.N.Y.1989).

**2.** Rule 109.12 provides:

> Inmates shall follow all facility regulations and staff directions relating to movement within the facility. This includes, but is not limited to, seating, lock-in, lock-out, call slip procedures, and all activities of a similar nature. 7 N.Y.C.R.R. § 270.2(B)(10)(iii)(1994).

between religious liberty and competing prior governmental interests." 42 U.S.C. § 2000bb(a)(5).

Subsequent to the Second Circuit's decision in *Jolly v. Coughlin,* 76 F.3d 468 (2d Cir.1996), courts in this circuit have analyzed prison inmates' free exercise claims separately under the standards of both RFRA and the First Amendment. *See Show v. Patterson,* 955 F.Supp. 182, 188–89 (S.D.N.Y.1997); *Ramirez v. Coughlin,* 919 F.Supp. 617, 619 n. 1 (N.D.N.Y.1996). It is to this analysis that the court now turns.

## A. RFRA.

RFRA provides:

**(a) In general**

Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.

**(b) Exception**

Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—

(1) is in the furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

**(c) Judicial relief**

A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb–1.

As an initial matter, a plaintiff alleging a violation of RFRA must demonstrate that his or her right to the free exercise of religion has been substantially burdened. 42 U.S.C. § 2000bb–1 (a); *Jolly v. Coughlin, supra,* 76 F.3d at 476. A substantial burden exists where the state "put[s] substantial pressure on an adherent to modify his [or her] behavior and to violate his [or her] beliefs." *Thomas v. Review Bd. of the Indiana Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981)(quoted in *Jolly v. Coughlin, supra,* 76 F.3d at 477); *see Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)(finding substantial burden where individual is forced to "choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion ..., on the other hand"); *see also Hicks v. Garner,* 69 F.3d 22, 26 n. 22 (5th Cir.1995)(examining courts' treatment of substantial burden inquiry under RFRA). The interference with the person's exercise of religion "must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." *Graham v. Commissioner,* 822 F.2d 844, 851 (9th Cir.1987)(quoted in *Davidson v. Davis,* 1995 WL 60732, at *5 (S.D.N.Y. Feb. 14, 1995)); *see also Muhammad v. City of New York Dept. of Corrections,* 904 F.Supp. 161, 190 (S.D.N.Y.1995).

Accepting for the purposes of this motion plaintiff's assertion of his adherence to the tenets of the Muslim faith,[3] I find that plaintiff has failed to establish that his right to exercise his religious beliefs has been substantially burdened. Defendants have submitted the affidavits of two Muslim Imams employed by NYSDOCS, which establish that an inmate's failure or inability to attend one Jummah service does not substantially interfere with the inmate's obligations as a practicing Muslim because those obligations may be fulfilled by individual prayer offerings with no adverse consequences (Items 39, 43). *Accord Abdur–Rahman v. Michigan Department of Corrections,* 65 F.3d 489, 491 (6th Cir.1995)(denial of Muslim inmate's request for release from work assignment to

---

**3.** Defendants have submitted the affidavit of Reverend Jeff Carter, Senior Chaplain at the Attica Correctional Facility where plaintiff is currently housed, indicating that plaintiff is registered in NYSDOCS records as an adherent of the Jewish faith.

attend Friday services did not substantially burden inmate's ability to practice religion; evidence submitted by Chaplain established that Muslims may be legitimately excused from Friday services for reasons such as sickness and work activities).

 Accordingly, plaintiff has failed as a matter of law to establish that his inability to attend Jummah services on September 30, 1994 as a result of keeplock confinement violated his statutory rights under RFRA. Summary judgment is therefore appropriate in favor of defendants dismissing the complaint to the extent that it states a RFRA violation.

### B.  First Amendment.

Under the First Amendment, prison regulations imposing burdens on an inmate's free exercise of religion need only be reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz, supra,* 482 U.S. at 349, 107 S.Ct. at 2404–05; *Abdul–Malik v. Goord,* 1997 WL 83402, at *7 (S.D.N.Y. February 27, 1997). The initial requirement for establishing a free exercise claim under the First Amendment is the same—the inmate must first demonstrate that the state action substantially burdened his or her exercise of religion. *Abdul–Malik, supra; see also Jolly v. Coughlin, supra,* 76 F.3d at 475.

Having already found that plaintiff's keeplock confinement during September 30, 1994 Jummah services did not substantially burden plaintiff's right to the free exercise of his religion under RFRA, I find that plaintiff has likewise failed as a matter of law to establish a violation of his rights under the free exercise clause of the First Amendment.

Accordingly, summary judgment is appropriate in favor of defendants dismissing the complaint to the extent that it states a First Amendment claim.

### CONCLUSION

Based on the foregoing, defendants motion for summary judgment (**Item 37**) is GRANTED, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants.

**SO ORDERED.**